RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0058p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

TILLMAN TRANSPORTATION, LLC dba Midnite Trucking,

    *Plaintiff-Appellant*,

    *v.*

MI BUSINESS INCORPORATED dba Red D Transport; RED D FREIGHT, INC.; EDWARD SCOTT DESBROUGH; NATALIE DESBROUGH,

    *Defendants-Appellees*.

No. 23-1777

─────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:23-cv-10197—Mark A. Goldsmith, District Judge.

Decided and Filed:  March 18, 2024

Before:  SILER, COLE, and MATHIS, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:**  R.J. Cronkhite, DINSMORE & SHOHL LLP, Troy, Michigan, for Appellant.  Erik G. Chappell, Julie A. Douglas, LYDEN, CHAPPELL & DEWHIRST, LTD., Lambertville, Michigan, for Appellees.

─────────────

## OPINION

─────────────

COLE, Circuit Judge.  The plaintiff, Tillman Transportation, LLC, engaged in Trucking Contracts with the defendant, MI Business, Inc. (operating as affiliate companies RDT and RDF).  In 2019 and 2020, Tillman and RDT entered into three contracts, where Tillman leased trucks to RDT and transported shipments for RDT.  At issue in this case, each contract included

binding arbitration clauses.  After the contracts terminated, the companies had multiple disputes resulting in this lawsuit and a separate ongoing arbitration.

The defendants moved to compel arbitration, but Tillman argued that Section 1 of the Federal Arbitration Act (FAA) exempted it from compulsory arbitration.  The district court granted the defendants' motion to compel arbitration, finding that Section 1 did not apply to the agreements' arbitration clauses because Tillman was a limited liability company in contract with another corporate entity.  Tillman appealed the decision.  We affirm.

I.

A.

The plaintiff, Tillman Transportation, LLC (Tillman), is incorporated in Michigan.  The defendants are two Michigan corporations—i.e., MI Business Inc., doing business as RDT and RDF—and two individuals, Edward Scott Desbrough and Natalie Desbrough, a married couple residing in Michigan.  The Desbroughs are equal owners of RDT, while Natalie Desbrough is the sole owner of RDF.

Tillman and RDT are both motor carriers under the Motor Carrier Act (MCA), 49 U.S.C. § 10101 *et seq*.  Both are licensed and registered with the United States Department of Transportation (DOT) and the Federal Motor Carrier Safety Administration (FMCSA).  RDF is a broker under the MCA and was licensed and registered with the DOT and FMCSA during the times relevant to the parties' dispute.

In 2019 and 2020, Tillman and RDT entered into three "Trucking Contracts," where Tillman leased three of its trucks to RDT and transported shipments or "loads" for RDT.  The contracts identify Tillman as an "independent contractor," and one of the contracts names Vernon Tillman—rather than Tillman Transportation—as a party to the contract.

Under the contracts, RDT agreed to pay Tillman 75 percent of the gross "load haul revenue" earned by Tillman's equipment minus advances to Tillman from RDT and charges to RDT's account by Tillman.  Importantly, each contract included a clause binding the parties to arbitration in the event of any "controversy or dispute . . . arising from [the] agreement."

The parties also agreed that Tillman would not solicit or haul any account that it had hauled on RDT's behalf for one year after the termination of the contracts (the "noncompete provision"). If Tillman breached the noncompete provision, it would be required to pay RDT ten percent of all revenues Tillman invoiced for that account during its relationship with the account.

Tillman used three trucks to transport loads for RDT. In turn, RDT shared weekly pay summaries that showed gross and net pay, including charges, deductions, and other offsets. After the contracts terminated, RDT alleged that Tillman violated the noncompete provision by soliciting and/or hauling goods for accounts it had hauled for RDT under the contracts.

Tillman later alleged that RDT provided false weekly pay summaries that omitted the broker fees that RDF charged RDT on each load. It also alleged that RDT violated Truth-in-Leasing regulations when it did not provide Tillman with documentation identifying the broker fee arrangement or showing that its pay was reduced in turn. Tillman claims it only discovered the companies' misconduct in 2022, when a former RDT employee joined Tillman and informed the company about the fees being charged and "that RDT and RDF were passing this 'cost' on to Tillman, without notice."

B.

The litigation surrounding this case is extensive, resulting in two separate lawsuits—one in state court, and the case in federal court we address here—and one ongoing arbitration. We briefly summarize the various proceedings below.

First, in November 2021, RDT filed a complaint against Tillman in Monroe County Circuit Court, Michigan, alleging breach of contract and asserting that Tillman violated the noncompete provision of the second contract. *Red D Transp., Inc. v. Tillman Transp., LLC, et al.*, Case No. 2021-144611 (Monroe Cnty. Cir. Ct. 2021). Tillman requested dismissal in a motion for summary disposition, asking the court to compel arbitration. In March 2022, the Monroe County Circuit Court granted Tillman's motion, dismissing the case without prejudice.

Then, on May 17, 2022, RDT filed a demand for arbitration against Tillman, asserting that Tillman breached their agreements. Arbitration Case No. 01-22-0002-1028, *Red D Transp.,*

*Inc. v. Tillman Transp., LLC d/b/a Midnite Trucking*, American Arbitration Association (2022). Tillman filed a counterclaim on June 1, claiming RDT materially breached the contracts. Tillman alleged that RDT failed to pay money due, undercompensated Tillman on all three contracts by underreporting gross income and not disclosing RDF's broker fees, and fraudulently concealed the existence of Tillman's claim through "affirmative misrepresentations" of gross haul revenue. Tillman also alleged that RDF "suddenly deactivated its brokerage license with the DOT and the FMCSA" in the last quarter of 2022, after Tillman became aware of these issues.

Finally, Tillman brought suit against RDT, RDF, and the Desbroughs in the Eastern District of Michigan on January 25, 2023. *Tillman Transp., LLC v. MI Bus. Inc.*, Case No. 2:23-cv-10197 (E.D. Mich. Jan. 25, 2023). Tillman alleged that the defendants participated in a "successful conspiracy" to underreport payments and underpay Tillman in violation of the Motor Carrier Act." The complaint alleged, among other things, that the defendants violated the MCA's Truth-in-Leasing regulations because they (1) did not pay Tillman certain amounts, (2) did not inform Tillman of their actual compensation for related work, and (3) failed to identify relevant identify relevant documents showing these compensatory failures. In February 2023, the defendants—RDT and RDF—filed a motion to compel arbitration and a motion to dismiss or stay proceedings in the federal case. Tillman responded, asserting that Section 1 of the FAA exempted Tillman from compulsory arbitration. Here, Tillman argues against arbitration despite its successful effort to compel arbitration and dismiss RDT's case in the Monroe County Circuit Court.

The district court ordered supplemental briefing on whether the Section 1 exemption applied to Tillman because it is a limited liability company and not an individual. The court issued its opinion and order on July 31, 2023, granting the defendants' motion to compel arbitration and to dismiss the case, but denying their request to do so with prejudice. *Tillman Transp., LLC v. MI Bus. Inc.*, No. 2:23-cv-10197, 2023 WL 4875872, at *1 (E.D. Mich. July 31, 2023). The district court noted that although one contract was between RDT and Vernon Tillman (Tillman Transportation's owner) in his capacity as an individual, Vernon Tillman did not bring the federal suit—his company did. *Id.* at *5. The court concluded that, as a limited

liability company in commercial contract with another corporate entity, Tillman did not qualify for the Section 1 exemption.  It also held that non-signatories to the contract (i.e., RDF and the Desbroughs) could compel Tillman to arbitrate, and that the entirety of Tillman's complaint was subject to arbitration.  The arbitrator subsequently joined RDF and the Desbroughs as parties to the ongoing arbitration.

Tillman filed the instant appeal, requesting that we reverse the district court's order, find as a matter of law that Tillman "is exempt from being compelled to arbitration under the Trucking Contracts," and remand to the district court for further proceedings.  (Appellant Br. 6, 30, 32.)  Tillman asserts that the contract falls under Section 1's exemption to the enforceability of arbitration agreements because the company was engaged in interstate commerce.  Tillman also argues that the district court erred in finding the Trucking Contracts were not contracts of employment or "work."  (*Id.* at 20.)  Tillman supports this argument by relying on the history and context of the FAA, where the term "contracts of employment" (at the time of enactment in 1925) referred to "agreements to perform work" and "did not necessarily imply existence of an employer-employee or master-servant relationship."  (*Id.* at 23.)

The defendants contend that the Section 1 exemption does not apply, and that the FAA does require enforcement of the arbitration clause at issue here.  They argue that Tillman is "attempting to avoid its contractual obligation to arbitrate" while simultaneously litigating the same claims in pending AAA arbitration, noting that the parties have already exchanged discovery in arbitration and that Tillman's counsel has taken depositions.

The defendants also argue that Michigan law—which has similar language to the FAA but no exemption for transportation workers—"independently compels arbitration."  The defendants note that in Tillman's initial brief, Tillman neither argued it was exempt under Michigan law, nor did it challenge the district court's finding that the non-signatories could compel arbitration.  The defendants therefore argue that these issues are "abandoned and are not reviewable."  Tillman filed a reply, reiterating its initial arguments, but now also asserting that the U.S. Constitution's Supremacy Clause bars compelling arbitration under Michigan law.

II.

This court "review[s] a District Court's decision to compel arbitration, including the arbitrability of a dispute, de novo." *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (citing *Huffman v. Hilltop Cos.*, 747 F.3d 391, 394 (6th Cir. 2014)). In addressing the question of whether the Section 1 exemption applies, we also "review a district court's [application of] statutory interpretation de novo." *Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 433 (6th Cir. 2019).

III.

The FAA's history and the current landscape of litigation relating to Section 1 is necessary context. The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, dates back to 1925, and was "a response to hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). Section 2 of the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts[.]" *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). It "makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). "The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Thus, "[l]ike other contracts . . . [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* at 68 (citation omitted). "In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018).

At issue here is Section 1, the FAA's exemption clause, which states that the Act does not "apply to contracts of employment of seamen, railroad employees, *or any other class of workers engaged in foreign or interstate commerce*." 9 U.S.C. § 1 (emphasis added). Before proceeding under the FAA, then, "a court must first know whether the contract itself falls within or beyond

the boundaries of §§ 1 and 2." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019). The Supreme Court has construed this provision narrowly "with reference to the statutory context in which it is found and in a manner consistent with the FAA's purpose." *Cir. City Stores, Inc.*, 532 U.S. at 118 ("[T]he location of the phrase 'any other class of workers engaged in . . . commerce' in a residual provision, after specific categories of workers have been enumerated, undermines any attempt to give the provision a sweeping, open-ended construction."). The Court, for example, observed in *Cir. City Stores* that the FAA's text "foreclose[d]" a broader construction of § 1 that sought to "exclude all employment contracts" from its reach, adding, "Section 1 exempts from the FAA only contracts of employment of transportation workers." *Id.* at 119.

The Court further analyzed Section 1's language in *New Prime Inc. v. Oliveira*, addressing whether the term "contracts of employment" could encompass agreements involving independent contractors. 139 S. Ct. at 536. In holding that it did include independent contractors, the Court interpreted the phrase as it would have been understood at the time of enactment in 1925, noting that contemporaneous dictionaries "tended to treat 'employment' more or less as a synonym for 'work.'" *Id.* at 539–40. Early 20th-century cases before the Court supported that definition, using the phrase "to describe work agreements involving independent contractors." *Id.* at 540.

## A.

*New Prime* did not address whether corporate entities such as limited liability companies are covered under Section 1's exemption. This is also an issue of first impression in our circuit. We generally endorsed a narrow construction of Section 1 based on the statute's language and Congress's apparent intent, holding that it should only "apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 600–01 (6th Cir. 1995) (noting "an obvious difference between the wording of § 2 of the Act, which defines what the Act covers, and the exclusionary clause of § 1 . . . . If Congress had intended the exclusion to be as broad as the coverage, it

would have used the same language in the exclusion clause."). This accords "with the underlying purpose of the Act, which is to favor arbitration." *Id.* at 601.

The persuasive authority before us aligns with our narrow application of Section 1, and other circuits have also interpreted Section 1 narrowly and declined to apply the exemption to contractual agreements between corporate entities. Indeed, when "courts have been asked to extend the reach of the 'transportation worker' exemption to contracts between business entities, they have uniformly declined to do so." *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 596 (4th Cir. 2023); *see also R&C Oilfield Servs. LLC v. Am. Wind Transp. Grp. LLC*, 45 F.4th 655, 658 (3d Cir. 2022) (affirming the district court's decision to compel arbitration where "the agreement was a vendor-vendee contract *between two businesses*, rather than a contract of employment") (emphasis added).

The Fourth Circuit's recent holding in *Amos* provides a helpful comparison. 74 F.4th at 596. There, a delivery company "directly employed" hundreds of drivers and "a fleet of Amazon-branded vehicles" to carry out a contract with Amazon in North Carolina. *Id.* at 593. Amazon later terminated the contract, alleging "material breaches," after which the delivery company sued Amazon in federal court in North Carolina. *Id.* Amazon sought to compel arbitration under the FAA—or alternatively, under Washington law—which the agreement itself invoked. *Id.* at 593–94. The delivery company and its owner objected, claiming the owner (a lawyer) was a transportation worker within the meaning of the FAA and an Amazon employee under state law; the delivery company consequently argued that exemptions to both the FAA and Washington law voided the arbitration clause. *Id.* at 594. The agreement itself did not name the owner as a party. *Id.* at 593.

The Fourth Circuit held that the Section 1 exemption did not apply, in large part because "the binding commercial contract" at issue was "a business services deal struck between two corporate entities[.]" *Id.* at 593. The agreement could not be considered a "contract of employment," as it did "not promise work and compensation to an individual employee, and it contain[ed] none of the hallmarks of a traditional employment contract, such as provisions regarding salary, benefits, and leave time." *Id.* at 596. Relying on *New Prime*, the Fourth Circuit explained that employment agreements between the delivery company and its drivers

("i.e., *workers* performing *work*") would qualify for the "transportation worker" exemption, but the agreement between the delivery company and Amazon did not. *Id.*

Even if this were a "contract of employment," the court added, "[s]eamen and railroad employees, of course, are natural persons—*individual* workers carrying out work. Sizable corporate entities are not 'similar in nature' to the actual human workers enumerated by the text of the . . . exemption[.]" *Id.* at 596–97. Finally, the owner's status as a nonparty to the agreement was important to the analysis; the court also explained that the delivery company "was not some legal fiction existing only to shield Amazon from unwanted liabilities—it was not a 'nominal party' or 'mere window dressing' that could be swept aside." *Id.* at 597.

## B.

Tillman relies heavily on *New Prime* to support its proposed interpretation of Section 1's exemption. The *New Prime* Court did conclude that "[w]hen Congress enacted the Arbitration Act in 1925, the term 'contracts of employment' referred to agreements to perform work." *New Prime Inc.*, 139 S. Ct. at 543–44. But *New Prime* did not address whether corporate entities could qualify as transportation workers under Section 1. Nor was this issue addressed by the First Circuit in its decision prior to Supreme Court review. *Oliveira v. New Prime, Inc.*, 857 F.3d 7, 17 (1st Cir. 2017) ("[B]ecause the parties do not dispute that Oliveira is a transportation worker under § 1, we need not address whether an LLC or other corporate entity can itself qualify as a transportation worker. We also need not address the scope of the word 'worker' in the residual clause of the § 1 exemption.").

The First Circuit instead constrained its analysis to a single issue: "whether an agreement between a trucking company and an individual transportation worker cannot be a 'contract of employment' within the meaning of § 1 if the agreement establishes or purports to establish an independent-contractor relationship." *Id.* The court concluded that Oliveira's contract was exempt from the FAA due to "the combination of the ordinary meaning of the phrase 'contracts of employment' and Prime's concession that Oliveira is a transportation worker[.]" *Id.* at 22. Defendants have made no such concession here, so the issue in this case turns on whether the Section 1 exemption applies to an agreement between two corporate entities.

The persuasive authority before us rebuts Tillman's argument.  True, unlike the owner in *Amos*, Vernon Tillman (Tillman Transportation's owner) was a party to one of the three Trucking contracts.  But as the district court observed, "[m]ore importantly, Vernon Tillman individually did not bring this lawsuit.  His company did." *Tillman Transp., LLC*, 2023 WL 4875872, at *5.  Further, even if Vernon Tillman had brought the suit in his individual capacity, he offers no evidence that he is a truck driver or transportation worker.  *See, e.g.*, *Cir. City Stores, Inc.*, 532 U.S. at 118 (construing Section 1 narrowly and explaining "the location of the phrase 'any other class of workers engaged in . . . commerce' . . . undermines any attempt to give the provision a sweeping, open-ended construction.").

Here, the district court correctly concluded that Section 1's exemption did not apply to limited liability companies like Tillman Transportation:

> Every case that the Court has located that addresses whether an LLC or corporate entity can itself qualify as a "transportation worker" or whether a commercial contract between corporate entities can constitute a "contract of employment" has found that a business entity is not a transportation worker, and that a commercial contract between two business entities is not a contract of employment.

*Tillman Transp., LLC*, 2023 WL 4875872, at *4.  This conclusion aligns with our narrow interpretation of Section 1, and the approaches of other circuits that have addressed this issue.  To the extent Tillman relies on *New Prime*, that reliance is misplaced given (1) the concessions by the defendants in *New Prime* that are not present here, and (2) the fact that the *New Prime* Court did not address whether corporate entities may be covered under Section 1.  Tillman has not provided any authority—binding or otherwise—to support its position.  As such, it should not be exempt from arbitration under Section 1.

### C.

Finally, the defendants correctly argue that Tillman did not properly raise for review whether Michigan law independently compels arbitration, whether non-signatories (RDF and the Desbroughs) could compel Tillman to arbitrate, or whether Tillman's entire complaint was subject to arbitration and dismissal without prejudice.  "[A]n 'appellant abandons all issues not raised and argued in its initial brief on appeal.'" *J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721, 730 (6th Cir. 2022) (citation omitted).  And "it is a settled

appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Id.* (citation omitted); *see also United States v. Russell*, 26 F.4th 371, 374−75 (6th Cir. 2022) ("[I]f an argument is waived, we don't consider it . . . [And] to waive the argument, the [party] must either (1) take some step to expressly abandon it or (2) fail to raise it in its first brief on appeal.") (internal citation and quotation omitted).  As such, because Tillman waived these arguments, we do not consider them.

IV.

For the foregoing reasons, we affirm the judgment of the district court.