NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0018n.06

Case No. 25-1396

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 08, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| DEBORAH MULCAHEY, an Individual, | ) | |
| Plaintiff-Appellant, | ) ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| TOWNSHIP OF CHOCOLAY, MICHIGAN, a | ) | |
| Michigan Charter Township; SCOTT JENNINGS, | ) | |
| an Individual; NICHOLAS CARTER, an | ) | |
| Individual; DALE THROENLE, an Individual; | ) | |
| WILLIAM DEGROOT, an Individual; | ) | O P I N I O N |
| ELIZABETH HILLSTROM, | ) | |
| Defendants-Appellees. | ) | |

Before: McKEAGUE, GRIFFIN, and THAPAR, Circuit Judges.

McKEAGUE, Circuit Judge. After Elizabeth Hillstrom complained that her neighbor Deborah Mulcahey was stalking her, police obtained a warrant for Mulcahey's arrest. When the charges against Mulcahey were dropped, she returned to court, this time asserting claims against Hillstrom, Chocolay Township, and several of its employees. The district court dismissed her federal claims and declined to exercise supplemental jurisdiction over her state law claims. Because Mulcahey forfeited review of her claims as to some defendants and failed to state a plausible claim as to the others, we **AFFIRM**.

**I.**

At this stage, we accept the facts as alleged in the complaint. *Martinez v. Wayne Cnty.*, 142 F.4th 828, 835–36 (6th Cir. 2025). But we also look to the various documents provided by the defendants—including police reports and a criminal complaint—because they are both public records and referenced in Mulcahey's complaint. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).[1]

After a long career, Mulcahey and her husband purchased a property in Chocolay Township, Michigan. Far from slowing down in retirement, Mulcahey "was regularly active in community issues affecting [the] Township," frequently "communicat[ing] her concerns to [] Township officials." Amended Complaint, R. 52, PageID 359, ¶ 11. According to Mulcahey, because of her "activism," numerous community members and Township employees viewed her as a "nuisance." *Id.*, PageID 359, 361, ¶¶ 11, 24.

So much so, in fact, that Mulcahey's next-door neighbor, Hillstrom, who was in the process of developing her property, accused Mulcahey of stalking. Two police reports prepared by Township Police Chief Scott Jennings document Hillstrom's allegations. In general, Hillstrom explained that "[t]here [had] been many instances where [Mulcahey] [had] harassed [her] and [her] family." Police Report, R. 28-2, PageID 211. More specifically, Hillstrom accused Mulcahey of lodging complaints about her property with government officials (sometimes based on incorrect

---

[1] Mulcahey contends that the magistrate judge and district court should have considered a complaint she filed in state court that contains "additional allegations" which "are central to the claims at issue here." Appellant Br. at 23. Beyond that general assertion, however, Mulcahey does not identify the additional allegations, nor does she explain how they impact her claims. And "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Tillman Transp., LLC v. MI Bus. Inc.*, 95 F.4th 1057, 1064 (6th Cir. 2024) (citation modified). That said, nothing in the state court complaint would change the outcome here.

information), confronting other neighbors about the Hillstrom property, spying on the Hillstroms near their property line, and taking pictures or videos of their property. And she accused Mulcahey of "harassing [her] from afar" by having "Laurie Kryzmowski and an unidentified man trespass on to [her] clearly marked no trespassing driveway." *Id.*, PageID 211; Police Report, R. 41-1, PageID 309. Several other neighbors corroborated that allegation, and the police reports suggest Hillstrom provided photographic evidence to police. In light of those facts, Township Police Officer Nicholas Carter signed a misdemeanor complaint, attesting that Mulcahey engaged in stalking under Michigan law. A judge agreed and issued a warrant for Mulcahey's arrest. Mulcahey turned herself in shortly thereafter. Eventually, however, the criminal charge was dismissed.

This lawsuit followed. Mulcahey contends that Hillstrom's allegations were "unfounded and false" and "void of any substance supporting a stalking claim." Amended Complaint, R. 52, PageID 359, 363, ¶¶ 16, 33. And she faults the defendants for failing to "conduct[] any meaningful investigation." *Id.*, PageID 364, ¶ 35. Mulcahey asserted Fourth Amendment and state law claims against Jennings, Carter, Township Planning and Zoning Administrator Dale Throenle, and Township Manager William DeGroot, a *Monell* claim against the Township, and a § 1983 conspiracy claim and several state law claims against all of the individual defendants, including Hillstrom.

Across two orders, the district court dismissed all of Mulcahey's claims. First, the magistrate judge recommended dismissing the § 1983 conspiracy claim. Over Mulcahey's objection, the district court agreed and declined to exercise supplemental jurisdiction over her state law claims.[2] The defendants then moved to dismiss Mulcahey's remaining federal claims. The

---

[2] Mulcahey does not challenge the district court's decision not to exercise supplemental jurisdiction.

magistrate judge recommended denying the motion as to the Fourth Amendment claims against Jennings and Carter but granting it in all other respects. The district court largely agreed but concluded that Jennings and Carter were entitled to qualified immunity. As a result, it dismissed all of the remaining claims, and Mulcahey appealed.

## II.

Mulcahey argues that the district court improperly dismissed (1) her claims against Jennings and Carter, (2) her conspiracy claim against the individual defendants, and (3) her claims against the Township and Throenle. We consider each argument in turn.

## A.

Start with Mulcahey's claims against Jennings and Carter, which the district court dismissed based on qualified immunity. To overcome qualified immunity at the Rule 12 stage, a plaintiff must plausibly allege that an official's acts violated a clearly established constitutional right. *Martinez*, 142 F.4th at 835. So, an "official is entitled to qualified immunity from a § 1983 suit if either (1) his conduct did not violate a constitutional right or (2) that right was not clearly established at the time of the conduct." *Id.* at 836. We can address those requirements in any order, and "if one is lacking, the court need not address the other and can dismiss the plaintiff's claim based on the defendant's immunity." *Id.* We review de novo whether Mulcahey's allegations overcome a qualified immunity defense. *Id.* at 835.

Mulcahey's claims against Jennings and Carter sound as false arrest and malicious prosecution claims under the Fourth Amendment. For each of those claims, all agree that Mulcahey must allege that Jennings and Carter lacked probable cause. *See, e.g.*, *Sykes v. Anderson*, 625 F.3d 294, 305, 308 (6th Cir. 2010). To do so, she must plausibly assert that "the facts and circumstances within the officer's knowledge" were insufficient "to warrant a prudent person, or one of

reasonable caution, in believing, in the circumstances shown, that the suspect [had] committed . . . an offense." *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 620 (6th Cir. 2021) (citation modified). Michigan law defines stalking as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested." Mich. Comp. Laws § 750.411h(1)(e). The requisite harassment comes in many forms, including entering onto a victim's property, appearing at a victim's residence, or simply being "within the sight" of a victim. *Id.* § 750.411h(1)(f); *see id.* § 750.441h(1)(d).

Against that backdrop, recall the circumstances Jennings and Carter confronted. Hillstrom informed Jennings that Mulcahey was directing others to trespass on her property, pacing along the property line, and repeatedly spying on her property by, among other things, taking photos or video. Hillstrom backed up her allegations with photo evidence and third-party corroboration. Keeping in mind that probable cause "is not a high bar" and "requires only a probability or substantial chance of criminal activity," we are not convinced that Mulcahey has plausibly alleged a lack of probable cause. *D.C. v. Wesby*, 583 U.S. 48, 57 (2018) (citation modified). More to the point, any mistake by Jennings and Carter as to the metes and bounds of Michigan's stalking prohibition was not an unreasonable one. And "when an officer reasonably misinterprets the meaning of state law, there is 'no violation of the Fourth Amendment in the first place,'" which is enough to foreclose Mulcahey's claims. *See Barrera*, 12 F.4th at 621 (quoting *Heien v. North Carolina*, 574 U.S. 54, 66 (2014)).

Pushing back, Mulcahey points out that Michigan's stalking statute immunizes "constitutionally protected activity or conduct that serves a legitimate purpose." Mich. Comp. Laws § 750.411h(1)(d). As she sees it, all her actions fit that bill, so probable cause was necessarily

5

lacking. But even if she is correct, Mulcahey has identified no cases that would have made that point clear to Jennings and Carter. True, as a general matter, it is clearly established that an arrest in the absence of probable cause violates the Fourth Amendment. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 279-80 (6th Cir. 2020). The Supreme Court, however, has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 63-64 (citation modified). Instead, a "rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 63 (citation modified). In the Fourth Amendment context, "the specificity of the rule is especially important" because probable cause "turns on the assessment of probabilities in particular factual contexts and cannot be reduced to a neat set of legal rules." *Id.* at 64 (citation modified). As a result, to overcome qualified immunity, a plaintiff must "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Id.* (citation modified).

Because Mulcahey has identified no such case, her argument comes up short. One case cited by Mulcahey, for example, considered whether surveillance by a licensed private investigator was exempt from the stalking statute. *Nastal v. Henderson & Assocs. Investigations, Inc.*, 691 N.W.2d 1, 8 (Mich. 2005). And another asked whether placing an advertisement with a victim's personal information in the newspaper served a legitimate purpose. *Hayford v. Hayford*, 760 N.W.2d 503, 509 (Mich. Ct. App. 2008). Tellingly, Mulcahey's lone citation to a case with somewhat similar facts is an unpublished decision from a district court. There, a police officer who arrested the plaintiff—based on reports of past harassment and witnessing one instance of the plaintiff criticizing the victim—was denied immunity. *Gerics v. Trevino*, No. 15-cv-12922, 2019

WL 2448324, at *5-6, 9 (E.D. Mich. June 12, 2019). But in resolving a different question on appeal, we noted that the police officer "undoubtedly had probable cause to arrest [the plaintiff] for stalking." *Gerics v. Trevino*, 974 F.3d 798, 807 n.8 (6th Cir. 2020). So, if anything, *Gerics* favors Jennings and Carter. Without binding, on-point guidance, even if Mulcahey's actions were not within the reach of the stalking statute, Jennings and Carter are nonetheless entitled to immunity because, at worst, they "reasonably but mistakenly concluded that probable cause was present." *Wesby*, 583 U.S. at 65 (citation modified); *Barrera*, 12 F.4th at 624-25.[3]

Even still, Mulcahey alleges that probable cause was lacking for other reasons. Primarily, she asserts that Jennings ignored exculpatory evidence and gave too much credence to Hillstrom's "self-serving, speculative statements." Appellant Br. at 30-34. Mulcahey correctly points out that, in some cases, an eyewitness account may be insufficient to establish probable cause. *See, e.g.*, *Ouza*, 969 F.3d at 282. Yet that holds true only if there is "an apparent reason" that a witness's account is untruthful or unreliable. *Id.* On that score, Mulcahey zeroes in on Kryzmowski's statement that she never trespassed on Mulcahey's property. But we fail to see why that statement would dispel probable cause, because although a "suspect's satisfactory explanation of suspicious behavior is certainly a factor" to consider, a police officer "is under no obligation to give any credence to a suspect's story." *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). As for the sufficiency of Hillstrom's accusations, it is true that "[s]peculation does not equate [to] probable cause" and we have sometimes found "mere allegation[s]" insufficient to justify an arrest. *Sykes*, 625 F.3d at 308 (citation modified); *Gardenhire v. Schubert*, 205 F.3d 303, 317 (6th Cir. 2000). Here, however, Mulcahey does not plausibly allege that Jennings relied only on Hillstrom's

---

[3] Mulcahey also suggests that her reports to Township officials were constitutionally protected. Appellant Br. at 27 (collecting Michigan cases). But that argument is unavailing because, even setting those reports aside, there are other facts supporting Jennings's probable cause determination.

allegations. Quite the opposite, the pleadings suggest Hillstrom provided photo evidence to back up her claims, and that numerous witnesses corroborated at least some of her allegations.

Mulcahey's other arguments are similarly unpersuasive. First, Mulcahey takes issue with Jennings's subjective beliefs about the investigation. "But plenty of cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Barrera*, 12 F.4th at 624 (citation modified). Second, Mulcahey contends that some of Hillstrom's accusations rely on hearsay. Even so, there is no prohibition on the use of hearsay in evaluating probable cause. *See, e.g.*, *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). Finally, as Mulcahey sees it, Jennings should have afforded her an opportunity to rebut Hillstrom's allegations before she was arrested. But once Jennings had probable cause, he was not required to investigate further. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 581 (6th Cir. 2003) (collecting cases). All told, the district court properly concluded that Jennings and Carter are entitled to qualified immunity. Mulcahey has not pled allegations from which we can infer a lack of probable cause, and even if she did, she points to no caselaw showing the officers violated a clearly established right in these circumstances.

**B.**

Mulcahey also argues that the district court improperly dismissed her conspiracy claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Instead, a plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A civil conspiracy under § 1983 requires "an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (citation modified). To state a conspiracy claim, a plaintiff must plead enough facts to support a reasonable inference "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (citation modified). And "it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016) (citation modified).

Mulcahey's allegations fall short. She contends that the defendants conspired to prevent her "from participating in local governmental affairs in violation of her constitutional rights." Appellant Br. at 41-42. Mulcahey, at best, has pled that the defendants individually sought to prevent her from engaging with the local government. Even so, beyond concluding that Hillstrom "acted in concert with . . . the other [d]efendants to deprive her of her civil rights," Mulcahey offers insufficient factual allegations to support the conclusion that the defendants shared a common plan. Amended Complaint, R. 52, PageID 366, ¶ 48; *see also id.*, PageID 369-70, ¶¶ 71-76. *See, e.g.*, *Heyne*, 655 F.3d at 564 (affirming dismissal of § 1983 conspiracy claim when plaintiff's complaint included allegations of defendants "conferring with one another at different points" but did not contain "more specific allegations of a plan or agreement to violate his constitutional rights"). To be sure, Mulcahey speculates that there were "nefarious" communications between Hillstrom and

9

the other defendants, and she makes much of the fact that Hillstrom was concerned with how Mulcahey would react to the accusations. Appellant Br. at 43. But without additional factual allegations to back up the conclusion that the defendants operated pursuant to a common plan, Mulcahey's "bare assertion of conspiracy [does] not suffice." *Twombly*, 550 U.S. at 556. As the magistrate judge aptly put it, the "amended complaint outlines a number of putative overt acts, but simply does not set forth the particulars of the agreement, i.e. when it was made, by whom, and perhaps most importantly, why." Report and Recommendation, R. 44, PageID 321 (emphasis omitted).

Resisting that conclusion, Mulcahey points to a statement made by Hillstrom. In a police report, Hillstrom explained her belief that Mulcahey was using government officials to harass her family but noted that "[w]e will defend the officials and say that they have been kind and they are just doing their jobs." Police Report, R. 41-1, PageID 310. She went on to assert that "[w]e are taking a stand against [Mulcahey]. Together we hope we can come to a safe and fair resolution that supports our public officials as well as our residents." *Id*. We fail to see how that vague statement exhibits an agreement that would move Mulcahey's conspiracy claim from possible to plausible.

## C.

Finally, Mulcahey tries to revive her claims against Throenle and the Township. The magistrate judge recommended that those claims be dismissed. And the report and recommendation clearly warned that "[f]ailure to file timely objections constitutes a waiver of any further right to appeal." Report and Recommendation, R. 61, PageID 516. Despite that admonition, Mulcahey filed no objections, and the district court adopted the magistrate judge's recommendation. As a result, she has waived the right to challenge the dismissal of her claims

against Throenle and the Township on appeal. *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).[4]

*Souter v. Jones* is not to the contrary. There, we recognized "that a party, who substantially prevails in a magistrate judge's recommendation, does not waive the right to appeal secondary issues resolved against him by failing to object to the recommendation." 395 F.3d 577, 586 (6th Cir. 2005). Here, unlike in *Souter*, the magistrate judge did not resolve mere secondary issues against Mulcahey—he recommended dismissing entire claims and parties.

### III.

We **AFFIRM** the judgment of the district court.

---

[4] The district court also dismissed all claims against DeGroot. Mulcahey does not challenge that decision on appeal. But even if she had, she likewise forfeited her right to appeal DeGroot's dismissal by failing to object below.