940 F.2d 661
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joan MONTGOMERY, Plaintiffs-Appellants,
v.
COUNTY OF CLINTON, MICHIGAN, et al. Defendants-Appellees.
 No. 90-1940.
 United States Court of Appeals, Sixth Circuit.
 Aug. 9, 1991.
 
 Before MERRITT, Chief Judge, BOGGS, Circuit Judge, and HULL, District Judge.*
 MERRITT, Chief Judge.
 
 
 1
 In this case involving a high-speed chase by police, a sixteen year old boy, Sannie Montgomery, wrecked his car and was killed. The pursuit by the police began when the Montgomery boy, speeding past police on a rural Michigan road, tried to elude police rather than stop when the police, coming from behind him, activated their overhead lights. A second police car joined the chase, tried unsuccessfully to block one lane of the road, and then ran into a ditch. Several miles later Sannie Montgomery lost control of his car and ran into a utility pole.
 
 
 2
 When Sannie Montgomery was pronounced dead at the scene, the medical examiner ordered an autopsy. The boy's parents were notified immediately of his death but apparently were not notified of the autopsy order. The county medical examiner acted under the authority of Michigan law, M.C.L. Sec. 52.202, which requires investigation of violent deaths. The medical examiner is to use diligent effort to notify the next of kin but may order the autopsy whether or not the next of kin consents. See M.C.L. Sec. 52.205(4).
 
 
 3
 The parents of Sannie Montgomery brought two sets of claims under 42 U.S.C. Sec. 1983. They asserted that the high speed chase constituted excessive use of force which led to an unreasonable seizure and a deprivation of life without substantive due process. The plaintiffs brought these claims first against the officers and second against the county and the sheriff, under the theory that the officers' training was so deficient as to constitute deliberate indifference on the part of the county and the sheriff.
 
 
 4
 Sannie Montgomery's mother, who is Jewish, brought a second set of claims. She asserted that the autopsy, done without notice or consent, infringed her right under the first amendment freely to exercise her religion. She asserted also that the autopsy was not necessary because the cause of death was not in question. At oral argument plaintiff appeared to be asserting a procedural due process claim based on Michigan's statutory requirement that the medical examiner use diligent effort to notify the next of kin of the decision to perform an autopsy.
 
 
 5
 The District Court granted summary judgment on all claims. The Court noted first that a claim asserting that excessive force resulted in a seizure is to be analyzed under the fourth amendment, not under a due process approach. The District Court relied on Graham v. Conner, 490 U.S. 386 (1989), for this proposition. Proceeding with the fourth amendment analysis, the Court declared there had been no seizure because there was no "governmentally caused termination of an individual's freedom of movement ... through means intentionally applied.' " Jt.App. at 31-32, quoting Browyer v. County of Inyo, 489 U.S. 593, 596-97 (1989). The District Court went on to say that although it was unnecessary to assess the reasonableness of the police action under a fourth amendment analysis because there was no seizure, the high-speed pursuit on primarily rural roads was not unreasonable. Jt.App. at 33, relying on Galas v. McKee, 801 F.2d 200 (6th Cir.1986). Because no fourth amendment violation occurred, claims against the county and the sheriff were held to be moot.
 
 
 6
 From the evidence supplied by both parties, including affidavits from religious scholars, the District Court concluded that an autopsy authorized by state law in a case of violent or accidental death and for the purpose of determining the cause of death was not actually contrary to the tenets of Joan Montgomery's faith. The Court nevertheless noted that her beliefs were entitled to respect and that the Court should not question her interpretation of these requirements. The Court held, however, that a religion-neutral law that had the effect of burdening religious practice could be justified by a reasonable relation to a legitimate governmental objective. The Court declared that the Michigan statute clearly had a reasonable relation to the state interest in knowing the cause of death in cases of violent or accidental deaths. The District Court cited Employment Division, Dept. of Human Resources of Oregon v. Smith, 110 S.Ct. 1595 (1990), for this less stringent test when religion-neutral laws were at issue.
 
 
 7
 We affirm the District Court's grant of summary judgment as to both sets of claims. The Court's holding as to the fourth amendment claims is directly within current Sixth Circuit and United States Supreme Court precedent, and the District Court's opinion is clear and well reasoned. The Court's ruling is further strengthened by a recent Supreme Court case, California v. Hodari, 111 S.Ct. 1547 (1991), which held that a show of authority to which the subject does not yield does not constitute a seizure. Even if Graham v. Connor, 490 U.S. 386 (1989), did not foreclose the plaintiffs' due process claim in relation to the high speed chase, the plaintiffs' due process complaint would not rise to the level required by Rochin v. California, 342 U.S. 165 (1952). The complaint is not founded on police conduct "that shocks the conscience." Id. at 172.
 
 
 8
 We also affirm the District Court's order as to the second set of claims. We are inclined to believe, however, that the plaintiff did not carry her burden in establishing the free exercise violation so as to require a balancing of interests. The proof does not establish that plaintiff's religion forbids autopsies but rather appears to allow them in these circumstances. Moreover, even if such an autopsy is inconsistent with plaintiff's religious practices, the District Court did not err in analyzing the state's superior interest.
 
 
 9
 There is no merit in the procedural due process claim founded on the state statutory requirement that the medical examiner make a diligent effort to notify the next of kin as to the decision to perform an autopsy. Whatever the nature of the right created by the statute there is an insufficient liberty or property interest under this statute to create a valid procedural due process claim. Although the notice requirement in the state statute does not appear to be discretionary, it does not purport to establish a right to control the dead body. We would distinguish this case from Brotherton v. Cleveland, 923 F.2d 477 (6th Cir.1991). In Brotherton the plaintiff had an "aggregate of rights granted by the state of Ohio" to control disposition of the body, including the corneas, and thus had a right to refuse removal of corneas for purposes of a cornea transplant. Id. at 482. In this case, the state left the decision as to autopsy to the discretion of the medical examiner, allowing the autopsy with or without the permission of the next of kin. The plaintiffs did not bring a pendent state law claim based on violation of the state statute. We were advised at oral argument that they have another case pending in state court raising state law claims. Thus we are not asked to determine whether any liability arose simply from a violation of the state statute. Plaintiffs' relief, if any, must come in the state court.
 
 
 10
 The judgment of the District Court is affirmed.
 
 
 
 *
 The Honorable Thomas G. Hull, Chief Judge for the United States District Court for the Eastern District of Tennessee, sitting by designation