RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0164p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

LUIS ANTONIO MARTINEZ, SR; ANA MARTINEZ DE JESUS; YARITZA MARTINEZ DE JESUS; DEBORA MARTINEZ DE JESUS; ENITH MARTINEZ DE JESUS,

  *Plaintiffs-Appellants*,

  *v.*

WAYNE COUNTY, MICHIGAN, et al.,

  *Defendants-Appellees*.

No. 24-1474

─────────────

On Appeal from the United States District Court
For the Eastern District of Michigan at Detroit.
No. 23-cv-1135—Matthew F. Leitman, District Judge.

Argued:  March 20, 2025

Decided and Filed:  June 23, 2025

Before:  GRIFFIN, NALBANDIAN, and MATHIS, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:**  Julie H. Hurwitz, GOODMAN HURWITZ & JAMES, PC, Detroit, Michigan, for Appellants.  Jason D. Killips, BROOKS WILKINS SHARKEY & TURCO, Birmingham, Michigan, for Appellees.  **ON BRIEF:**  Julie H. Hurwitz, Matthew S. Erard, Huwaida Arraf, GOODMAN HURWITZ & JAMES, PC, Detroit, Michigan, for Appellants.  Jason D. Killips, Maureen T. Taylor, BROOKS WILKINS SHARKEY & TURCO, Birmingham, Michigan, for Appellees.

  NALBANDIAN, J., delivered the opinion of the court in which GRIFFIN, J., concurred, and MATHIS, J., concurred in part and in the judgment.  MATHIS, J. (pg. 21), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

NALBANDIAN, Circuit Judge.  Luis Martinez Jr. died in February 2021 and the Wayne County Medical Examiner's Office (WCMEO) took control of his body.  The WCMEO found his next of kin but inexplicably did not contact them.  Meanwhile, the family hired a social worker to find out what happened to Luis Jr.  In April 2021, the investigator found him.  But by then, his body was in an advanced state of decomposition and had to be cremated.

The family sued Wayne County and various state officials under § 1983 alleging a Fourteenth Amendment procedural due process claim, a *Monell* liability claim, and various state-law claims.  The defendants moved to dismiss, and the district court granted the motion.  The family appealed.  Although it's clear that the complaint alleges tragically irresponsible conduct by the defendants, that conduct is not a clearly established constitutional violation.  And the *Monell* claim fails on both the lack of a clearly established constitutional violation and a failure to state facts supporting the claim. So we affirm.

**I.**

Because this case is on a motion to dismiss, we take the facts as plaintiffs alleged them in the complaint.  *England v. DENSO Int'l Am. Inc.*, 136 F.4th 632, 634 (6th Cir. 2025).  On February 3, 2021, Luis Antonio Martinez Jr. was found unconscious and transported to a hospital.  He was pronounced dead that evening.  The next day, his body was transferred to the WCMEO where Dr. Michael Caplan performed an autopsy.  Defendants William Kasper, Dale Collins, Dr. Leigh Hlavaty, Dr. Carl Schmidt, and two investigators (Davis and Doe) (collectively, the "individual defendants") conducted and supervised an investigation into Luis Jr.'s next of kin.  They identified Luis Jr.'s body, his date of birth, two last known addresses, and eight family members who are next of kin.  Despite finding them, no one from the WCMEO contacted the family about Luis Jr.'s death.

After realizing he was missing, Luis Jr.'s family hired a social worker to find him.  On April 8, 2021, the social worker told Ana Martinez De Jesus, Luis Jr.'s sister, that he was dead,

and his body was in the WCMEO's possession.[1]  Ana went to the WCMEO and demanded to see him and take possession of his body.  An investigator spoke with Ana but only showed her photos of Luis Jr.'s body because "by then the body was in an advanced state of decomposition." R.13, Second Am. Compl., p.7, PageID 68.  Ana and various individual defendants argued for forty-five minutes, during which Ana was told that no one notified her of Luis Jr.'s death because they "were backed up and didn't get to it until now." *Id.*

Ana was not allowed to see Luis Jr.'s body before the body was transferred to a funeral home and cremated.  The family could not identify his remains or confirm that the cremated body was in fact Luis Jr.'s body.  They were also denied sacred funeral and burial rites because the body had to be cremated.

Luis Jr.'s next of kin are his father, Luis Antonio Martinez Sr., and his four sisters, Ana, Yaritza, Debora, and Enith Martinez De Jesus (collectively, "Martinez Family").  They sued the individual defendants and Wayne County alleging a federal constitutional violation under 42 U.S.C. § 1983 against the individual defendants, a *Monell* liability claim against Wayne County, and Michigan state-law claims of gross negligence and intentional or reckless infliction of emotional distress.

For the § 1983 claims, the family alleged that they had a property interest as Luis Jr.'s next of kin that is recognized under state law and protected by the Fourteenth Amendment.  They alleged that the defendants violated that interest by not telling them about Luis Jr.'s death until the body was severely decomposed.  And that the lack of a a pre- or post-deprivation hearing violated their procedural due process rights.  They also alleged that Wayne County was liable under a *Monell* theory for either not training WCMEO staff on their responsibility to notify and deliver a decedent's body to the next of kin or not acting to ensure WCMEO staff fulfilled this responsibility.

The defendants moved to dismiss under Rule 12(b)(6).  The district court granted the motion with prejudice for the federal claims on April 25, 2024.  The district court found that any

---

[1]Because the last name of each of the family members is either Martinez or Martinez De Jesus, we refer to them by their first names.

alleged rights violation was not clearly established. And the *Monell* claim failed because the family did not allege facts to state a plausible claim for relief. The court declined to exercise supplemental jurisdiction over the family's state claims and dismissed them without prejudice. The Martinez Family appealed.

## II.

We review de novo the district court's dismissal of a § 1983 suit based on qualified immunity. *Crosby v. Univ. of Ky.*, 863 F.3d 545, 551 (6th Cir. 2017). The plaintiff has the burden of showing that a defendant is not entitled to qualified immunity, but that burden is "not high at the 12(b)(6) stage: Reading the complaint in the light most favorable to the plaintiff, it need only be 'plausible' that an official's acts violated a clearly established constitutional right." *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023).

But while the burden is not high in this posture, it does not disappear either. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Rather, to state a plausible claim, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). And the validity of a qualified immunity defense, like most affirmative defenses, "may be apparent from the face of the complaint," in which case dismissal is proper. *Id.* at 763. A county official is entitled to qualified immunity from a § 1983 suit if either (1) his conduct did not violate a constitutional right or (2) that right was not clearly established at the time of the conduct. *Crawford*, 15 F.4th at 760. This court can address these prongs "in either order." *Id.* And if one is lacking, the court need not address the other and can dismiss the plaintiff's claim based on the defendant's immunity. *Id.*

Because any constitutional violation alleged by the Martinez Family is not clearly established, we affirm. And so we do not address whether the defendants' conduct violated the Martinez Family's constitutional rights. Still, some background on the alleged violation is necessary to understand why it is not clearly established.

**A.**

The Martinez Family alleges that the defendants violated their Fourteenth Amendment due process rights by depriving them of a property interest without procedural protections. Under the Due Process Clause of the Fourteenth Amendment, a state cannot "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To show a procedural due process violation, the plaintiff must allege (1) a life, liberty, or property interest protected by the Due Process Clause; (2) that he was deprived of that interest; and (3) that the state did not provide him adequate process prior to depriving him of the interest. *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009).

The Constitution does not create property interests. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Instead, those interests are "created and their dimensions are defined by existing rules . . . from an independent source such as state law." *Id.* Still, once that interest has been identified, whether it is constitutionally protected "is a question of federal constitutional law." *Waeschle*, 576 F.3d at 544 (quoting *Whaley v. County of Tuscola*, 58 F.3d 1111, 1114 (6th Cir. 1995)). To receive constitutional protection, the property interest "must be more than abstract desires or attractions to a benefit." *Id.* at 544–45 (internal quotation marks omitted). The plaintiff must have "a legitimate claim of entitlement" to the interest. *Id.* at 545 (internal quotation marks omitted).

The Martinez Family alleges that they had "fundamental property interests in Luis, Jr.'s body." R.13, Second Am. Compl., p.9, PageID 70. So first we will look to state law (here, Michigan law) to decide whether that property interest exists. Then we will apply federal law to decide whether the Constitution protects it.

We have held that "Michigan provides the next of kin with a constitutionally protected property interest in the dead body of a relative." *Whaley*, 58 F.3d at 1116. But the interest is not necessarily in the body itself. Rather, three Michigan Supreme Court cases have explained the contours of the interest.

In 1899, the Michigan Supreme Court first recognized a "quasi property" right associated with a dead body. *Keyes v. Konkel*, 78 N.W. 649, 649 (Mich. 1899). In *Keyes*, undertakers took

charge of a corpse and began preparing it for burial when the decedent's son demanded the body back. *Id.* The undertakers refused to turn it over without payment for their services, so the son brought an action for replevin. *Id.* The court acknowledged the son had rights but found that replevin was not a suitable action to vindicate those rights and dismissed the suit. *Id.* Regarding the son's rights, the court noted that in English common law "there can be no property in a human body." *Id.* (citing *Williams v. Williams*, 20 Ch. Div. 659 (1882)). But contemporaneous American courts had identified a "right to control and bury [a body], and to recover against one who mutilates the corpse." *Id.* And that "quasi property" right provided recovery "not for the damage to the corpse as property, but damage to the next of kin by infringement of his right to have the body delivered to him for burial without mutilation." *Id.* So even though a replevin action could not stand, a court might have equitable jurisdiction "to prevent interference with the control of the dead body by persons entitled to control it." *Id.*

The Michigan Supreme Court built on this principle in *Doxtator v. Chicago & W.M. Ry. Co.* later that year. 79 N.W. 922 (Mich. 1899). There, a widow sued her late husband's employer for allowing his legs to be amputated and destroyed during an attempt to save his life after a railroad accident. *Id.* at 923. The attempt failed and, after he died, she claimed a right to have her husband's body buried with his legs. *Id.* at 922. The court again acknowledged the next of kin's "entitle[ment] to possession of the body, as it is when death comes." *Id.* at 922. Both parties had conceded "that it is an actionable wrong for another to interfere with that right by withholding the body or mutilating it in any way." *Id.* at 922. But that right was not helpful under these facts. It was "[a]nother question" entirely whether a "right of action exists in the widow for the destruction of fragments amputated from the body of her husband during his lifetime." *Id.* at 923. Still, the court didn't need to answer this question either because the wife did not sue the proper parties. *Id.* at 924. And the court reversed the lower court's decision on those grounds. *Id.*

In *Deeg v. City of Detroit*, the Michigan Supreme Court confirmed it was "settled by the great weight of authority that the unlawful and intentional mutilation of a dead body gives right to a cause of action on behalf of the person or persons entitled to the possession, control, and burial of such body." 76 N.W.2d 16, 19 (Mich. 1956) (discussing *Keyes*, 78 N.W. at 649, and

*Doxtator*, 79 N.W. at 922). A hospital had removed certain organs from the decedent's body for laboratory examination and then destroyed them. *Id.* at 18. The exam was not medically necessary and was done without the widow's consent. *Id.* So the widow sought damages for interference with her right to the possession and burial of the whole body. *Id.* The court said that the widow had a cause of action, not based on a property right to the body itself but based on the hospital's infringement of her right to "have the body delivered to [her] for burial without mutilation." *Id.* at 19 (quoting *Keyes*, 78 N.W. at 649). But the widow died during the litigation. *Id.* at 20. And since the right was personal to her as next of kin, standing to sue died with her and did not pass to her estate. *Id.* at 20. So the court dismissed the suit. *Id.*

These cases confirm that Michigan provides some right to next of kin related to the possession of the decedent's body and the body's condition. *See also Waeschle*, 576 F.3d at 546 (noting the right "of the next of kin 'to possess the body for burial and prevent its mutilation'" "was inferred from several Michigan Supreme Court cases recognizing a cause of action for the unlawful mutilation of a corpse." (quoting *Whaley*, 58 F.3d at 1114)). And in *Whaley* we considered how the Constitution protects that right.

There, a pathologist's assistant removed the corneas from corpses without the next of kin's permission. *Whaley*, 58 F.3d at 1113. The assistant ran an eye bank and had a business agreement with two counties where he would pay all the counties' autopsy expenses whenever he took the corneas from a corpse and half the expenses when he did not. *Id.* The decedent's next of kin sued under § 1983 alleging Fourteenth Amendment procedural due process violations. *Id.* The district court dismissed the suit finding that "Michigan law did not create an interest in a dead body sufficient to qualify as a 'property interest'" under the Constitution. *Id.* And on appeal, we had to decide "whether the next of kin have a property interest in the body, including the eyes, of a deceased relative." *Id.* We reviewed *Keyes*, *Doxtator*, and *Deeg* to conclude that Michigan provides the next of kin "a right to possess the body for burial and prevent mutilation." *Id.* at 1115 (citing *Doxtator*, 79 N.W. 922; *Keyes*, 78 N.W. 649; and *Deeg*, 76 N.W.2d 16). So we reversed the motion to dismiss.

We also held that *Brotherton v. Cleveland*, 923 F.2d 477 (6th Cir. 1991), governed the question in *Whaley* because the rights recognized by Michigan and Ohio were the same. *Id.* at

1114.  That case also involved the nonconsensual removal of corneas from corpses and found a property interest existed under Ohio law.  *Id.*  In coming to that decision, we highlighted several Ohio statutes that granted relatives rights in their deceased relative's body as well as Ohio court cases that gave next of kin a "'legitimate claim of entitlement' in the [deceased person's] body." *Id.* (alteration in original) (quoting *Brotherton*, 923 F.2d at 482).  Like Michigan courts, Ohio courts denounced a general property right in a dead body.  *Id.*  But we found this labeling immaterial because, taken together, Ohio's cases and statutes "grant[ed] the next of kin the right to dispose of the body by making a gift of it, to prevent others from damaging the body, and to possess the body for purposes of burial" and "[s]uch rights in an object are the heart and soul of the common law understanding of 'property.'"  *Id.* at 1115.  So in substance, Ohio granted next of kin a property interest.

Turning to Michigan law, we found *Keyes*, *Doxtator*, and *Deeg* provided "virtually identical" rights in a decedent's body that Ohio provided.  While based in common law rather than statutory law, Michigan still provided next of kin "the right to dispose of the body in limited circumstances, possess the body for burial, and prevent its mutilation."  *Id.* at 1116.  So like in *Brotherton*, the next of kin possessed "a constitutionally protected property interest in the dead body of a relative."  *Id.*

**B.**

But just because the next of kin have some constitutionally protected property rights does not mean that right extends to the circumstances here or that it is clearly established that the conduct here violated that right.  We turn now to that latter question, which resolves this case.

A right is clearly established if "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks and alterations omitted).  Plaintiffs need not find a case directly on point, but existing precedent at the time the conduct occurred must place the "constitutional question beyond debate."  *Id.*  And to ensure that, courts cannot "define established law at too high a level of generality."  *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam).  "It is not enough that a rule be *suggested* by then-existing precedent";

the specifics of existing law must make the contours of the rule clear. *Id.* (emphasis added) (internal quotation marks omitted).

The Martinez Family claims the defendants violated their clearly established rights when they failed to notify them of Luis Jr.'s death and failed to prevent the mutilation and mishandling of his body. They point to the cases discussed above as well as a few others discussed below to allege that their rights are clearly established. They also claim several Michigan statutes establish their rights.

The family zeroes in on our statement in *Whaley* (relying on *Doxtator*, *Keyes*, and *Deeg*) that the Michigan courts have held that the "next of kin have a right to possess the body for burial and prevent its mutilation." 58 F.3d at 1115. But this statement defines the right at too high a level of generality to put WCMEO officials on notice that their conduct here violated the family's constitutional rights. The heart of the Martinez Family's claim is that the failure to timely notify them of Luis Jr.'s death deprived them of their right to possess the body for burial, specifically because the body was severely decomposed and required cremation. So two things undergird the alleged constitutional violation: (1) delayed notification of the decedent's death and (2) severe, natural decomposition of the corpse. Put differently, this case involves a body's natural decomposition due to (at most) reckless conduct by state officials. But none of the cases cited deal with these issues.

*Whaley* dealt with a pathologist's assistant who removed the corneas from corpses without the next of kin's permission and gave them to an eye bank. 58 F.3d at 1113. The court never discussed *when* the next of kin's right to possess the body kicked in or when the next of kin must be notified of the decedent's death because the due process violation was based on the intentional mutilation of the body—not notification or decomposition. *Id.* at 1115. *Brotherton* dealt with nearly identical, intentional conduct: the nonconsensual removal of corneas from corpses. 923 F.2d at 479. And so it likewise never discussed timely notification of death to next of kin or natural decomposition.

Those cases involve volitional acts, which is consistent with the standard definition of mutilation.[2]  The family says that allowing a body to badly decompose is essentially the same thing as mutilation.  And they're right that to a grieving family, the result looks no different.  But that's not enough.  Neither *Whaley* nor *Brotherton* nor any other case in our circuit establishes a next of kin's right to recover when a failure to timely notify them of a death leads to the severe, but natural, decomposition of the decedent's body.  And that's especially important in the context of § 1983, which otherwise requires intent.

Next, we turn back to state law.  But to the extent that the Martinez family relies on Michigan law alone to clearly establish the law here, it is of no help.[3]  Start with *Deeg*.  76 N.W.2d 18.  The case dealt with a hospital that unnecessarily removed and destroyed organs from the decedent's body.  *Id.* at 18.  Again, it was a case about intentional mutilation rather than natural decomposition or notification of death.  *Id.* at 19.  To be fair, *Doxtator* and *Keyes* are different.  They don't deal with intentional mutilation, but the next of kin's possessory interest in the body.  *Doxtator*, 79 N.W. at 922 (wife claims right to have her husband's body buried with his legs); *Keyes*, 78 N.W. at 649 (son claims right to reclaim body from undertaker).  Still,

---

[2]Available definitions of "mutilation" almost universally involve some affirmative act of destruction, which was not present here.  *See* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/mutilation (last visited May 28, 2025) (defining "mutilation" as "(1) an act or instance of destroying, removing, or severely damaging a limb or other body part of a person or animal; (2) an act or instance of damaging or altering something radically"); *see also* Cambridge University Press & Assessment Online Dictionary, https://dictionary.cambridge.org/dictionary/english/mutilation (last visited May 28, 2025) (defining "mutilation" as "(1) the act of damaging something severely, especially by violently removing a part; (2) the act of destroying an idea or a piece of art or entertainment").

Although we found one definition of "mutilate" that arguably allowed for a bit more passivity: "to deprive (a person or animal) of a limb or other essential part."  Dictionary.com, https://www.dictionary.com/browse/mutilate (last visited May 28, 2025).  It is unclear whether the common understanding of the word would encompass knowingly allowing a body to decompose.  Even so, as the district court pointed out, all of the mutilation cases in Michigan courts involve intentional mutilation, not natural decomposition.

[3]Procedural due process cases present a unique challenge with respect to the clearly established inquiry because we look to state law to define the contours of the property right that the plaintiff is asserting.  *Roth*, 408 U.S. at 577.  So we examine state law to figure out whether it was obvious to the defendant officials that the asserted property interest was recognized by the state and federally protected.  *Waeschle*, 576 F.3d at 550 (finding the plaintiff's "alleged constitutionally protected property right . . . is . . . not clearly established because the underlying state-created property interest is not 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" (quoting *Drogosch v. Metcalf*, 557 F.3d 372, 379 (6th Cir. 2009))).  This poses a challenge in cases like this one where the asserted property interest doesn't "resemble any traditional conception of property."  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 766 (2005).

neither case answers the question here because the conduct behind the cases was notably different.

In *Keyes*, the undertaker intentionally withheld the body in pursuit of payment from the next of kin. 78 N.W. at 649. So again, we have intentional conduct unlike the conduct here. *Doxtator* appears closer because it did not involve intentional conduct; the alleged rights violation arose from the company "negligently allow[ing] the cremation of the dissevered limbs." 79 N.W. at 599. But it is a great distance away from our facts. First, nothing in the case dealt with delayed notification. The next of kin was notified of her husband's death and that his limbs had to be amputated. *Id.* at 597. Second, the amputation occurred "during his lifetime" since it sought to save his life. *Id.* So her right to receive the body "as it is when death comes" was "another question" not at issue in the case. *Id.* And finally, the court did not need to decide anything about the defendant's conduct because the wife sued the wrong party. *Id.* It is hard to see how a case decided on entirely different grounds than the situation here could establish the unconstitutionality of our defendants' conduct.

In each of these cases, the Michigan Supreme Court made general statements about the next of kin's right to possess the body. And this general right was the starting point for the court's analysis, but "general propositions of law are generally . . . insufficient to clearly establish a right." *Rhodes v. Michigan*, 10 F.4th 665, 679 (6th Cir. 2021). And they certainly do not put the individual defendants here on notice that their conduct—not notifying Luis Jr.'s next of kin of his death until his body was severely, but naturally, decomposed—amounted to a constitutional violation. Without that, the constitutional violation is not well-defined enough to be clearly established. *See al-Kidd*, 563 U.S. at 741.[4] The district court came to the same conclusion. It found that these cases did not involve "claims concerning the timeliness of delivery of the corpse or naturally-occurring [sic] decomposition." *Martinez v. County of Wayne*, No. 23-cv-11350, 2024 WL 1806423, at *6 (E.D. Mich April 25, 2024). So even if some

---

[4]The Martinez Family points to a few other cases that are even less helpful for them. For example, *Dennis v. Robbins Funeral Home* has some language about withholding a corpse, but that case dealt with how Michigan's statute of limitations applied to alleged torts by a funeral director or a mortician. 411 N.W.2d 156, 159 n.8 (Mich. 1987). The differences on the facts and law make it impossible for the case to clearly establish the right at issue here.

statements by Michigan courts "suggest" a rights violation may exist, this does not clearly establish the violation. *Bond*, 595 U.S. at 12.

Next, the Martinez Family points to the Michigan Court of Appeals' decision in *Dampier v. Wayne County*, 592 N.W.2d 809 (Mich. Ct. App. 1999). In *Dampier*, a plaintiff claimed to have a constitutionally protected property right in the decedent's body that the county violated by allowing it to severely decompose. *Id.* at 816–17. She alleged a state constitutional violation and requested leave to amend her complaint to add a federal Fourteenth Amendment claim under § 1983, which the court denied after dismissing the state claim. *Id.* at 812–13. The Michigan Court of Appeals affirmed on the state-constitutional claim finding that no such property right existed. *Id.* at 817. But then it reversed and granted the plaintiff leave to amend her complaint to add the federal claim. *Id.* at 819. It held the plaintiffs "alleged an interference with their federal constitutional property right, pursuant to the *Whaley* decisions." *Id.* at 820.

But *Dampier* doesn't help the plaintiffs here. To begin with, "[f]or a right to be clearly established, 'existing *precedent* must have placed the . . . constitutional question beyond debate.'" *Bell v. City of Southfield*, 37 F.4th 362, 368 (6th Cir. 2022) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)). So we have rejected a plaintiff's attempt to use an unpublished case to clearly establish a right. *Id.* at 367–68. Though this court has not always been consistent with that requirement, we have said that, at minimum, a "robust consensus of cases of persuasive authority" is necessary absent controlling authority. *Stewart v. City of Euclid*, 90 F.3d 667, 674 (6th Cir. 2020). *Dampier* is neither binding precedent on this court nor does the single case show a "robust consensus" among persuasive authority.[5]

The district court pointed out other problems with the *Dampier* decision. *See Martinez*, 2024 WL 1806423, at *9. The Michigan Court of Appeals appeared to miss the fact that the federal-due-process right at issue was based on a state-created property interest because the

---

[5]In fact, the case seems to conflict with other Michigan Courts of Appeals cases that say "[t]he due process guarantee of the Michigan Constitution is coextensive with its federal counterpart." *Grimes v. Van Hook-Williams*, 839 N.W.2d 237, 242 (Mich. Ct. App. 2013); *see also People v. Johnson*, 971 N.W.2d 692, 695 n.3 (Mich. Ct. App. 2021) (same); *Cummins v. Robinson Township*, 770 N.W.2d 421, 438 (Mich. Ct. App. 2009) (per curiam) (same); *People v. Sierb*, 581 N.W.2d 219, 221 (Mich. Ct. App. 1998) (same and reminding that "courts should reject the 'unprincipled creation of state constitutional rights that exceed their federal counterparts'" (quoting *Sitz v. Dep't of State Police*, 506 N.W.2d 209, 218 (Mich. 1993))).

federal Constitution does not create property rights. *Roth*, 408 U.S. at 577. So its conclusion that the claim didn't implicate a cognizable state-property interest but rather one under the federal Constitution was internally inconsistent. Similarly, the court did not seem to appreciate that *Whaley* relied on Michigan caselaw. 58 F.3d at 1115. So *Dampier* is not persuasive.

The Martinez Family tries to buttress *Dampier* by distinguishing the state and federal constitutions and claiming that the district court focused on the right's label rather than its state-law substance. Even if that were true, it still leaves the matter unresolved at best. And two other district court cases in this circuit have come out the other way. *Badder v. Schmidt*, 50 F. Supp. 3d 902, 917–18 (E.D. Mich. 2014) ("no clearly-established constitutional right was violated by Defendants' delay in notifying [the Plaintiff] of her daughter's death"); *Majchrzak v. Wayne County*, No. 20-10778, 2022 WL 20692608, at *5 (E.D. Mich. 2022) ("no authority" for the plaintiff's claim that "an alleged delay in notifying family of a relative's death, or an alleged delay in delivering the body to them, violates a constitutional right"). And it's worth noting that these cases seemed to have more faithful interpretations of *Whaley*.[6] Given this, it is hard to see how existing precedent can place the constitutional issue beyond debate.

Finally, the Martinez Family points to a Michigan statute to claim that it helps establish the right. They point to § 52.205(4), which says that "the county medical examiner shall ascertain the identity of the decedent and immediately and as compassionately as possible notify the next of kin of the decedent's death and the location of the body." Mich. Comp. Laws § 52.205(4). While this statute might make the defendants aware that they violated state law, it does nothing to put them on notice that they violated a *federal constitutional* rule. For that, the family looks to *Whaley* to say that the state statutes "contemplate and imply the next of kin's right to possession of the body, to which the protection of federal law attached." Appellant Br. at 28.

---

[6]The Martinez Family claims that *Badder* and *Majchrzak* came out differently because of the different facts. They are correct that each of those cases involved human errors that prevented the medical examiner from identifying the next of kin while this case involves a medical examiner who identified but did not contact the next of kin. But that is a distinction without a difference. The relevance of these cases are their propositions of *law*, not the facts. Both cases held that existing Michigan and Sixth Circuit caselaw did not clearly establish a constitutional right to prompt notification of a decedent's death to prevent significant decomposition of the body before burial. And though those cases are not binding on us, we raise them to highlight that there is no consensus of persuasive authority that the right exists.

*Whaley* did find that two Michigan "statutes imply that the next of kin do indeed have a 'right' to the deceased relative's body." 58 F.3d at 1116. But those were two different statutes than the statutes the Martinez Family raised. And regardless, this was an offhand remark after the court emphasized that in Michigan it is common law—not statutory law—that has developed the next of kin's rights. *Id.* The court expressly stated that "no Michigan statute clearly states that there is such a right," even though two statutes seem to contemplate its existence. *Id.* These statements cannot put a reasonable official on notice that violating § 52.205(4) amounts to a constitutional violation. Whatever the nature of the obligations imposed by the statute, it does "not purport to establish a right to" immediate notice of a decedent's death and so cannot clearly establish it. *See Montgomery v. County of Clinton*, No. 90-1940, 1991 WL 153071, at *2 (6th Cir. Aug. 9, 1991) (table opinion) (finding a state law requiring officials to notify a decedent's parents before an autopsy does not create a constitutional right to recovery based on the examiner's failure to follow the statute).

Because the Martinez Family did not have a clearly established constitutional right to timely notice of Luis Jr.'s death to prevent decomposition of his body, the defendants are entitled to qualified immunity.

## III.

The Martinez Family also appeals the district court's dismissal of their *Monell* liability claim against Wayne County. The district court found the complaint did not state a viable claim for relief. The court also noted that its holding that the family did not allege a clearly established constitutional violation "may be fatal" to the municipal liability claim but did not definitively answer that question. *Martinez*, 2024 WL 1806423, at *13 n.6.

## A.

We review a dismissal for failure to state a claim de novo. *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 692 (6th Cir. 2022). A claim survives only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). And to be facially plausible, the claim must allow the court

"to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

While this court must accept the plaintiff's factual allegations as true, it is "not required to accept legal conclusions or unwarranted factual inferences as true." *Crosby*, 863 F.3d. at 552 (internal quotation marks omitted). And similarly, a "'legal conclusion couched as a factual allegation' is not entitled to a presumption of truth." *Crawford*, 15 F.4th at 762 (quoting *Iqbal*, 556 U.S. at 678).

**B.**

A municipality is not subject to § 1983 liability "for an injury inflicted solely by its employees or agents." *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1038 (6th Cir. 2024) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Instead, the municipality can only be held liable "for [its] *own* illegal acts." *Id.* (alteration in original) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). So the plaintiff must show that an employee's unconstitutional conduct stems from a municipal "policy or custom." *Coleman v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 130 F.4th 593, 599 (6th Cir. 2025).

A policy or custom is broadly defined to include more than written rules. *Id.* It can also include a policy of inaction. *Franklin v. Franklin County*, 115 F.4th 461, 472 (6th Cir. 2024) (alterations omitted). To set forth a claim on this theory, the complaint must show

> (1) the existence of a clear and persistent pattern of unconstitutional conduct; (2) notice or constructive notice on the part of the municipality; (3) the municipality's tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction; and (4) that the [municipality's] custom was the moving force or direct causal link in the constitutional deprivation.

*Id.* (alterations in original) (internal quotation marks omitted). The plaintiff cannot rely on a single instance to show a pattern of unconstitutional conduct. *Id.*

A related but distinct basis for *Monell* liability is the municipality's failure to train its employees. *J.H. v. Williamson County*, 951 F.3d 709, 720–21 (6th Cir. 2020). To state a claim under this theory, the complaint must allege that a "need for more or different training is so

obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 721 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  Here, liability can be established "based on a single violation of federal rights" when the plaintiff also shows that the municipality's failure to train "present[ed] an obvious potential for a constitutional violation." *Id.* (internal quotation marks omitted).  But the plaintiff has the burden of showing two layers of obviousness:  "It must be obvious that the failure to train will lead to certain conduct, *and* it must be obvious (*i.e.*, clearly established) that the conduct will violate constitutional rights." *Id.* (internal quotation marks omitted).

Regardless of the asserted theory, our precedent shows that "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) (alteration in original) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)).  And if "no underlying rights violation [is] plausibly established in the[] complaint, we [will] affirm the district court's dismissal of [a] *Monell* claim." *Id.* at 1102.  Similarly, when the complaint alleges municipal liability based on a policy of inaction or a failure to train, "[t]he absence of a *clearly established* right spells the end of th[e] *Monell* claim." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017) (emphasis added).  That's because a policy of inaction relies on the municipality's deliberate indifference.  *See Franklin*, 115 F.4th at 471.  And "a municipality cannot *deliberately* shirk a constitutional duty unless that duty is clear." *Arrington-Bey*, 858 F.3d at 995.  Likewise, a failure to train theory requires it be obvious (i.e., clearly established) that the conduct violates a constitutional right. *J.H.*, 951 F.3d at 721.  So both theories rely on a clearly established constitutional violation.

The lack of a clearly established constitutional violation alone "spells the end of [the Martinez Family's] *Monell* claim." *See Arrington-Bey*, 858 F.3d at 995.  They allege two theories of liability.  First, they claim Wayne County had a policy of "fail[ing] to supervise, train, and/or discipline employees . . . as to their responsibility to notify Plaintiffs of Luis, Jr.'s death and to deliver to Plaintiffs possession of his body." R.13, Second Am. Compl., p.11, PageID 72.  Second, they claim that the municipality is liable for "[c]ondoning, approving, ratifying, and acquiescing in known unconstitutional conduct, and known patterns of unconstitutional conduct,

undertaken by its employees." *Id.* These are essentially the failure to train and policy of inaction theories of liability. And both require a clearly established constitutional violation. *See Arrington-Bey*, 858 F.3d at 995; *J.H.*, 951 F.3d at 721. So for the reasons outlined above, both fail.

The Martinez Family resists this conclusion by arguing that *Arrington-Bey* was wrongly decided given *Owen v. City of Independence*, 445 U.S. 622 (1980), and *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993). Whatever merit this argument may have, "this circuit follows the rule that the holding of a published panel opinion binds all later panels unless overruled or abrogated en banc or by the Supreme Court." *Freed v. Thomas*, 976 F.3d 729, 738 (6th Cir. 2020) (internal quotation marks omitted). And while we are "not bound by dictum" in prior opinions, the holding that a lack of a clearly established constitutional violation dooms certain *Monell* claims was necessary for the outcome in *Arrington-Bey*, and so was not dictum. *Id.*; *Arrington-Bey*, 858 F.3d at 995 (affirming because the plaintiff did not show that the allegedly violated right was clearly established). So we are bound by that finding, and dismiss the family's *Monell* claim.

We also agree with the district court's conclusion that, regardless of the lack of a clearly established constitutional violation, the complaint fails also to state a plausible claim to relief because it lacks sufficient factual allegations to support their *Monell* claim.

Let's begin with the policy of inaction. The complaint concludes that Wayne County "was on actual notice that Defendant [Schmidt], its official policymaker, had a history of failing to promptly and compassionately notify next of kin of decedents' deaths." R.13, Second Am. Compl., p.11, PageID 72. But there are no allegations about prior instances that would provide actual notice of the failing that would support this conclusion. Similarly, the complaint says that "as a matter of policy" Wayne County "condon[ed] and/or acquiesce[ed] in all Defendants' unconstitutional deprivation[s]" and it was "known to" Wayne County that this acquiescence was "highly likely and probable to cause violations of the constitutional rights of members of the public." *Id.* at pp.11–12, PageID 71–72. And that this "custom, policy and/or practice" "was a moving force in the violations of Plaintiff's constitutional rights." *Id.*

But this is just a "formulaic recitation of the elements of a *Monell* claim." *Savoie v. City of E. Lansing*, No. 21-2684, 2022 WL 3643339, at \*6 (6th Cir. Aug. 24, 2022). And again, a "'legal conclusion couched as a factual allegation' is not entitled to a presumption of truth." *Crawford*, 15 F.4th at 762 (quoting *Iqbal*, 556 U.S. at 678). So these statements cannot state a plausible claim for relief. *See id.*

The complaint is similarly lacking on the failure-to-train theory. It asserts, in a single, conclusory sentence, that the County maintained a policy or custom of "failure to supervise, train and/or discipline employees . . . as to their responsibility to notify Plaintiffs of Luis, Jr.'s death and to deliver to Plaintiffs possession of his body." R.13, Second Am. Compl., p.11, PageID 72. But again, there are no factual allegations to support this conclusion and the statement is just a recitation of the elements of a *Monell* claim. So the complaint lacks sufficient facts to state a plausible claim for relief and must be dismissed. *See Kenjoh Outdoor*, 23 F.4th at 692.

To make up for the lack of factual allegations in the complaint, the Martinez Family requests that we "take judicial notice" of public reporting and an internal audit that allegedly details a pattern of similar constitutional violations. Appellant Br. at 34–35. But this information was not presented to the district court. And under Federal Rule of Appellate Procedure 10, the record of appeal is made up of "(1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk." Given this rule, "[t]his court is not required to enlarge the record on appeal by taking judicial notice of extra-record facts for the first time." *United States v. O'Dell*, 805 F.2d 637, 643 (6th Cir. 1986).

While not required, we may take judicial notice of facts at our discretion. *Id.* Still, the Federal Rules of Evidence generally limit judicial notice to facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Martinez Family puts forth articles from a variety of local news outlets, but their accuracy cannot be readily determined. So it would be improper for us to take judicial notice of these articles. Even more, the family essentially asks us to "take judicial notice of the contents of these documents for the truth of the matters they assert"—their allegations of Wayne County mishandling corpses and delaying notification to next of kin. Appellant Br. at 34–35;

*Abu-Joudeh v. Schneider*, 954 F.3d 842, 848 (6th Cir. 2020).  When that occurs, it is "no different than moving to supplement the record." *Abu-Joudeh*, 954 F.3d at 848.  And that is generally only allowed when there is an omission or misstatement in the record that a party looks to have corrected.  Fed. R. App. P. 10(e)(2).

Declining to consider this evidence also aligns with the general principle that we "will not entertain on appeal factual recitations not presented to the district court when reviewing a district court's decision." *Bormuth v. County of Jackson*, 870 F.3d 494, 500 (6th Cir. 2017) (en banc) (quoting *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 995 (6th Cir. 2007)).  This principle seems especially salient when reviewing a motion to dismiss because the district court cannot consider matters beyond the complaint without converting the motion to dismiss into a motion for summary judgment.  *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001).  The narrow exception to that rule is that a district court "may consider public records" in deciding a motion to dismiss without turning it to a motion for summary judgment.  *Id.* at 645.  But that exception is not relevant here because the information put forward is neither a public record nor something the district court considered.

Still, this court has acknowledged that it can depart from the general bar on considering evidence presented for the first time on appeal when, in its discretion, it finds "injustice might otherwise result." *In re Eagle Picher Indus., Inc.*, 131 F.3d 1185, 1189 (6th Cir. 1997) (quoting *Singleton v. Wulff*, 428 U.S. 106, 121 (1976)).  But even if we considered the articles here to establish that the municipality was aware of a pattern of unconstitutional conduct, it would not cure the complaint's other deficiencies.  The complaint still presents no factual allegations showing that the municipality approved of this unconstitutional conduct or that a custom of such approval was "the moving force" behind the constitutional violation at issue.  *See Franklin*, 115 F.4th at 471.  Nor would judicial notice of these articles solve the complaint's failure to put forth facts alleging a "need for more or different training [that] is so obvious . . . that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *J.H.*, 951 F.3d at 721.  And finally, there is the lack of a clearly established constitutional violation.  So judicial notice is not proper.  We affirm the district court's dismissal the family's *Monell* claim.

**IV.**

The Martinez Family undeniably faced a tragic loss made worse by the county's response.  But they have not alleged a clearly established constitutional violation, which dooms their claims.  For that reason, we affirm.

————————————

**CONCURRENCE**

————————————

MATHIS, Circuit Judge, concurring in part and concurring in judgment. I join Parts I, II, III(A), and IV of the majority opinion in full. And I join Part III(B) of the majority opinion to the extent it holds that the Martinez Family has failed to plead sufficiently their *Monell* liability claim. I thus would not reach the question of whether the Martinez Family's *Monell* claim can survive without their due-process claim.