NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0272n.06
Nos. 24-1891 / 25-1077

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

PENG GUO, Ph.D.,

      Plaintiff-Appellant (24-1891),
      Plaintiff-Appellee (25-1077),

v.

MICHIGAN TECHNOLOGICAL UNIVERSITY
and DEAN L. JOHNSON,

      Defendants-Appellees (24-1891),
      Defendants-Appellants (25-1077).

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

Jun 23, 2026
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

---

Before: SUTTON, Chief Judge; STRANCH and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. A jury found Michigan Technological University liable for pregnancy discrimination against one of its professors, Peng Guo. But Guo contends that the discrimination extended beyond just pregnancy. She believes the jury should have heard other allegations of sex, race, and national origin discrimination, which the district court disposed of at summary judgment. She appeals the summary judgment decision. Michigan Tech also appeals, claiming that no pregnancy discrimination occurred, so the jury verdict should be set aside. Because the district court did not err in its rulings, we AFFIRM across the board.

I.

Plaintiff Peng Guo was the nonmoving party at the summary judgment stage and then obtained a favorable jury verdict, so we recite the facts in the light most favorable to her. Guo is a Chinese-born, Asian woman. She came to the United States for graduate school. While she was completing her graduate studies, Michigan Technological University offered her and her husband,

J. Daniel Eshleman, positions as assistant professors of accounting. Guo's offer was contingent upon Eshleman accepting his offer, but Eshleman's offer contained no such contingency. At the time of the offers, Eshleman, who was American-born and white, had already earned his PhD and was a tenure-track professor at Oklahoma State University. Guo was still working towards her PhD and had no prior tenure-track experience.

Both Eshleman and Guo received tenure-track offers, with a six-year tenure clock. Michigan Tech evaluates progress toward tenure with a minor review in the first, third, and fifth years; a major review in the second and fourth years; and a final tenure review in the sixth year. The couple accepted the offers and began teaching in August 2015, receiving the same starting salary.

In the fall of 2016, Guo and Eshleman began their second year at Michigan Tech. At the beginning of the academic year, Guo was assigned to serve on the Research Committee. And she informed the university that she was pregnant. A short time later, Defendant Dean Johnson, Dean of the College of Business, offered Guo a nine-month appointment as the "Richard and Joyce Ten Haken Faculty Fellow in Accounting" for that academic year. R. 165-4, Ex. 4, PageID 1992. The fellowship included a $1,750 stipend. At the end of the calendar year, both Guo and Eshleman received merit-based pay increases of 1.5%.

Guo took maternity leave during the Spring 2017 semester. Michigan Tech offered tenure-track faculty two parental leave options. Professors could "choose to be relieved of all duties while on leave of absence" while receiving "full pay for up to 6 weeks." R. 165-1, Ex. 1, PageID 1958. Or they could elect "one semester at full pay while being relieved from teaching duties for the duration of the leave of absence but continuing to perform their other duties at 50% in a research

capacity including graduate student supervision." *Id.* The policy was silent as to service requirements. Guo chose the second option.

On January 8, 2017, while Guo was on leave, another professor emailed Guo and others regarding the semester's agenda for the Research Committee. The email expressed the professor's hope that Guo would continue organizing brown bag seminars, a form of academic service, throughout the semester. Separately, the professor sent a calendar invitation for a committee meeting on January 11. Guo responded to the invitation the following day, January 9: "I will not be able to come to this meeting. I will be delivering my baby soon and am on maternity leave this semester." R. 165-9, Ex. 9, PageID 2029. No one responded.

Guo gave birth on January 12 via emergency C-section. On January 22, she responded to the agenda email saying, "I would love to keep organizing the brown bag seminar. I may not be able to attend all presentations, but will be able to coordinate them by email." *Id.* at 2028. The other professor then thanked Guo for her offer and said, "Please let me know if you need any support." R. 165-8, Ex. 8, PageID 2024.

On February 2, Guo received a calendar invitation to attend her annual review with Dean Johnson—scheduled for February 13. Guo attended the review. During the meeting, Johnson told her, "you're released from teaching and you're only doing 50 percent of research[,] so you have lots of . . . free time, and you should really use that freedom." R. 157, Trial Tr., PageID 1514–15. Guo could not remember what Johnson asked her to do but it was "something work related." *Id.* at 1515. Guo responded that the "free time" was the time she needed for childcare and recovery. *Id.* Johnson didn't say "too much" in response, but he reminded her of her tenure clock and told her she needed to complete a professional development plan, addressing her "plan now that [she] ha[d] a baby" and her "plan moving forward." *Id.* at 1515–16.

Throughout Guo's maternity leave, Johnson expected her to perform service duties. Guo performed them by, for example, delivering food for the Research Committee seminars. But at some point during Guo's leave, the university provost had informed Johnson that, although the school's leave policy did not explicitly address service, employees were supposed to be relieved from such duties.

Guo resumed her full workload in the Fall 2017 semester. Near the beginning of the academic year, Johnson again offered her a nine-month appointment as the Ten Haken Fellow in Accounting/Finance, which again provided a stipend. Eshleman was offered the Ten Haken Fellowship in Business for the same academic year. Guo's and Eshleman's fellowship stipends were identical. Near the end of the calendar year, Guo received a merit-based pay raise of 1.13%. Her husband received a raise of 2.24%. After doing some calculations, Guo discovered that, in 2017, she had received the lowest overall salary increase in the College of Business and that the average increase was more than double what she received.[1]

The following semester, in February 2018, Guo had her interim review. During reviews, Michigan Tech evaluates a professor's research, teaching, and service, giving more weight to research (50%) and teaching (40%) than to service (10%). In evaluating Guo's performance, Johnson noted that she had two forthcoming peer-reviewed articles and stated that she needed to "build her research pipeline." R. 165-4, Ex. 4, PageID 1979. He rated her teaching performance

---

[1] It's unclear whether Guo is comparing apples to apples. Michigan Tech provided two types of salary increases: merit and equity. Faculty "compete" for a share of the money set aside for merit increases, "based on how well they're doing in their job as compared to others." R. 157, Trial Tr., PageID 1335–36. Equity increases, on the other hand, are used to "correct inequities in pay between individuals . . . who were basically doing the same job at the same level of performance but one was being paid more than the other person." *Id.* at 1357. While Guo complains that she received a low merit-based raise, she relies on overall salary comparisons for each year. She does not, however, account for the fact that some portion of the raises may have been based on equity. Defendants, for their part, do not provide any clarity.

as "needs improvement." *Id.* Further, he said that her service "should be expanding at this stage," noting that she "elected to be relieved from teaching duties for the duration of her [p]arental leave but was expected to continue to perform her research and service duties." *Id.*

In April 2018, Guo asked to meet with Johnson to discuss her merit raise and interim review. During the meeting, she asked Johnson "what was going on with [her] low raise[?]" He replied that it was "because you took maternity leave and you didn't do enough service." R. 157, Trial Tr., PageID 1522–23. Following the meeting, Guo emailed Johnson to "summarize things [Johnson had] said," asking him to "correct [her] if [he] disagree[d]" with her summary. R. 165-5, Ex. 5, PageID 2015. Guo's email described Johnson as having expressed his expectation that, during her maternity leave, Guo would still "do service such as faculty meetings, committee work, as well as 50% of [her] normal research load." *Id.* at 2016. Johnson never responded to her email. Around this time, Guo also complained to Johnson that he was discriminating against her.

About three weeks after the April meeting, an email went out to the faculty saying that the school had decided not to renew a database subscription and asking the faculty to remove the database from their hard drives. At some unidentified point, Guo also learned that another database would not be renewed. Both databases were important to Guo's and Eshleman's research. Then in the summer of 2018, Johnson told Guo that he was going to switch her from being the Ten Haken Accounting/Finance Fellow to being the Ten Haken Business Fellow. He subsequently offered Guo the Ten Haken Fellowship in Business and offered Eshleman the other fellowship. The stipends accompanying Guo and Eshleman's fellowships were, again, identical.

At the end of 2018, Guo and Eshleman again received merit increases. Guo received a merit raise of 1%; Eshleman received 1.84%. The average overall salary increase for that year

was 1.93%. While Guo did not receive the lowest increase, she described it as "low or low-ish." R. 157, Trial Tr., PageID 1536.

When the new semester began in January 2019, Johnson emailed Guo regarding a student clinic, the Volunteer Income Tax Assistance Program (VITA). Johnson told her that he "expect[ed] [her] to handle all aspects of VITA this year with full responsibility of its success." R. 169-6, Ex. 39, PageID 2712. Guo thanked him for the opportunity and asked if she could purchase tax-return software for the program. Johnson consented.

That same January, Guo had her fourth-year review. For this review, the Tenure, Promotion, and Reappointment (TPR) Committee and Johnson each evaluated her research, teaching, and service. The committee, in its review, "recognize[d] her strong research effort" and recommended she turn "her productive pipeline into publications." R. 165-7, Ex. 7, PageID 2022. It deemed her teaching "satisfactory" and "encourage[d] her to continue [her] pattern of improvement." *Id.* And it deemed her service "satisfactory for her rank." *Id.* The committee then unanimously voted in favor of recommending her reappointment.

Johnson also recognized that Guo had "made steady progress in her research portfolio" and, echoing the committee, recommended that Guo "convert her pipeline" and "build a solid portfolio" of publications. R. 165-10, Ex. 10, PageID 2065. Regarding teaching, he noted that Guo's improved evaluations were "encouraging." *Id.* On service though, Johnson disagreed with the committee, stating that Guo's service "needs improvement." *Id.* Nonetheless, he opined that his recommendations were "achievable" and "agree[d] with the [TPR] Committee's recommendation to reappoint." *Id.* at 2065–66.

Then, in February 2019, Guo reported to Audrey Mayer, Assistant to the Provost for Academic Equity and Inclusion, that Johnson had been discriminating against her. In March,

Guo's husband, Eshleman, submitted his resignation because he had accepted a tenure-track position at Rutgers University in Camden, New Jersey. At some unknown point, Guo had applied for the same position at Rutgers, but she was not selected. Despite this, in March, Guo contacted Rutgers, seeking to teach there as an adjunct professor during the 2019–20 academic year.

In April, an associate dean at Michigan Tech, Mari Buche, emailed Guo, raising concerns regarding Guo's supervision of the VITA program. Buche told Guo, "If you are unable to complete the task, please notify me immediately. Other arrangements will have to be made, since the current situation is untenable." R. 169-11, Ex. 44, PageID 2724. Guo promptly responded, saying, among other things, "If you are not happy with the way I run VITA, I would like to step down from VITA, effective today Mar 27th, 2019." *Id.* After some further discussion, Guo sent a mass email, stating, "I am no longer in charge of VITA. This was a joint decision by me and the Dean's Office last week." R. 169-13, Ex. 46, PageID 2734.

Soon after, a university laptop with the tax software was removed from Guo's office. Suspecting theft, Guo called the campus police. But then she learned that the laptop had been given to another professor so that the students could use the software for VITA.

Around this time, unbeknownst to Michigan Tech, Guo secured a part-time position at Rutgers as an adjunct professor for the fall 2019 semester, and she and Eshleman listed their Michigan house for sale. Also in April, Defendants offered the Ten Haken Fellowship in Business for the 2019–20 school year to a different professor. Unlike Guo's prior fellowships, however, this fellowship was for a three-year period and provided an annual $4,000 stipend. During this semester, Defendants also failed to pay Guo her $1,750 Ten Haken stipend (for her 2018–2019 fellow appointment).

In June, Guo and Eshleman relocated to Pennsylvania. And in August, Guo emailed Johnson to resign from her position at Michigan Tech. Johnson responded the following day, accepting her resignation effective August 18.

Guo then filed a charge of discrimination with the EEOC. After receiving a Notice of Right to Sue, Guo sued Michigan Tech and Johnson. She alleged that both defendants had violated the Equal Pay Act; that Michigan Tech had committed race, sex, and national origin discrimination in violation of Title VII and Michigan's Elliott-Larsen Civil Rights Act (ELCRA); and that the school had retaliated against her for reporting discrimination. She also brought a 42 U.S.C. § 1981 race discrimination claim and a § 1983 race, national origin, and sex discrimination claim against Johnson individually.

Defendants moved for summary judgment on all counts. The district court granted the motion regarding the Equal Pay Act claim, some of the Title VII and ELCRA discrimination claims, and the retaliation claims. The court also granted Johnson qualified immunity because Guo "made no attempt to show that any right was clearly established." R. 73, Mot. Hr'g Tr., PageID 529–30. After this, only pregnancy discrimination remained. The court found that a genuine issue of material fact existed as to whether Michigan Tech discriminated against Guo on the basis of pregnancy when it gave her a low merit raise in 2017 and withheld her Ten Haken stipend.

Before trial, another district court judge took over the case. At a pretrial conference, a magistrate judge determined that Guo had failed to properly plead an ELCRA pregnancy-discrimination claim because her complaint used the term "gender" instead of the statutory term "sex." *See* R. 114, Pl.'s Obj., PageID 675–76. Guo objected, and the district court reversed the ruling. So, the case proceeded to trial on pregnancy discrimination under Title VII and ELCRA.

Before trial, Defendants filed multiple motions in limine to exclude references to wage disparity, constructive discharge, rejected adverse-action allegations, and tenure review, which they claimed were not relevant to the pregnancy discrimination claim. The district court denied all the motions.

Before trial occurred, Eshleman passed away. The jury found Michigan Tech liable for pregnancy discrimination under ELCRA but not under Title VII. The jury awarded Guo $5,000 in economic damages and $200,000 for past and future emotional distress. Both parties appeal.

II.

We first address Guo's appeal (no. 24-1891). Guo raises four arguments challenging the district court's summary-judgment determinations. We address each in turn.

A.

Guo first argues that the district court erred in granting Michigan Tech and Johnson summary judgment on her Equal Pay Act claim. Summary judgment is appropriate when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review this claim de novo and view the evidence in the nonmoving party's favor. *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017).

The Equal Pay Act prohibits an employer from discriminating "between employees on the basis of sex" by paying employees of the opposite sex different wages "for equal work." 29 U.S.C. § 206(d)(1). But the Act allows pay disparities that are "based on any other factor other than sex." *Id.* To establish a prima facie case of wage discrimination, the plaintiff must show that her employer paid different wages for ostensibly equal work. *Schleicher v. Preferred Sols., Inc.*, 831 F.3d 746, 752 (6th Cir. 2016). If she establishes this, the employer, bearing the burdens of production and persuasion, must prove that an affirmative defense justifies the wage differential.

*Id*. at 752–53. If successful, the plaintiff must then present evidence demonstrating a triable issue of fact regarding pretext. *Id*. at 753.

The parties agree that Guo established a prima facie case. She and her husband were both associate professors of accounting at Michigan Tech and started at the same salary; but, eventually, the school awarded Eshleman higher merit increases. At the end of 2017, Guo received a merit raise of 1.13% while Eshleman received 2.24%. The following year, Guo received a 1.0% raise, and Eshleman received 1.8%. Thus, Eshleman earned more for ostensibly equal work. *See* 29 U.S.C. § 206(d)(1); *Schleicher*, 831 F.3d at 752.

The district court nonetheless granted Defendants summary judgment on this claim because the pay disparity stemmed from a factor other than sex. Specifically, the court found that "plaintiff's research, rating, and experience did not match that of Dr. Eshleman and that these reasons justif[ied] the minimal difference in salaries." R. 73, Mot. Hr'g Tr., PageID 517–18. Guo argues that Defendants failed to prove that any of these factors justified the pay disparity. We disagree.

We first address research. Eshleman's scholarly output exceeded Guo's. Between 2016 and 2018, Eshleman published six articles, one of which Guo co-authored. Guo, meanwhile, published only one article that was not co-authored by Eshleman. So, disregarding the co-authored articles, Eshleman published five articles to Guo's one.

Not only did Eshleman publish more, but he also published higher quality articles. It's undisputed that Defendants used the Australian Business Deans Counsel List to evaluate publication quality. The list ranked publications, rating the best as A*, followed by A, B, and C. One of Eshleman's non-coauthored articles appeared in an A* journal; two others appeared in A publications. Guo's single non-coauthored article, meanwhile, appeared in a B or C rated journal.

Based on this, no reasonable juror could dispute that Eshleman published more and higher quality articles than Guo. *See Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023).

Guo's arguments to the contrary are unavailing. Guo first argues that her working papers created a genuine dispute regarding research quantity and quality. Guo asserted that she had two working papers "undergoing final consideration for publication" in a journal "considered more prestigious than any journal Dr. Eshleman or any other Michigan Tech Accounting professor ha[d] published in." R. 66-4, Guo Decl., PageID 351–52. But she pointed to no evidence showing that Defendants, in determining merit raises, considered working papers and published articles as equivalents. *Cf. Zandvakili v. Univ. of Cincinnati*, 2024 WL 278548, at *7 (6th Cir. Jan. 25, 2024) ("Its merits may be debated, but the aphorism is apt: 'publish or perish.'"). If anything, the record suggests the opposite.[2] So, Guo's reliance on her working papers failed to create a triable issue regarding Eshleman's superior research.

Guo next argues that her conference activity created a triable issue on whether Eshleman had superior research. Guo presented at one conference in 2017 and two more in 2018. She seemingly argues that a fourth—from 2019—should also be considered, but she offers no evidence to suggest that the 2019 conference would have been considered for either the 2017 or 2018 salary increase. Eshleman meanwhile spoke at a conference in 2017 and authored a paper for a presentation in 2018. So, in 2017, Guo and Eshleman each had one conference activity; and in 2018, Eshleman had one while Guo had two.

---

[2] In opposing Defendants' summary-judgment motion, Guo submitted an exhibit that appears to be Michigan Tech's "policies and procedures" regarding merit raises. R. 66-15, Ex. N, PageID 441–45. According to that document, a professor receives more credit for two published articles than one published article combined with either one working paper or one conference presentation.

But Guo offers no evidence indicating that her additional conference merited a higher raise or would have caused Defendants to view Guo's research as having matched Eshleman's superior publication record. Again, if anything, the record suggests the opposite. Based on the evidence submitted, no reasonable juror could conclude that Guo's research was equal to Eshleman's. *See Hrdlicka*, 63 F.4th at 566–67.

We now turn to teaching. Defendants argued that Eshleman consistently received higher marks in his teaching evaluations, justifying a higher merit increase. They backed this assertion with records from 2015–2018, showing Eshleman's higher ratings. Guo offered no argument or evidence to the contrary. Thus, there is no question of material fact regarding Eshleman's superior teaching ratings.

Despite this, Guo argues the district court erroneously determined that Eshleman's prior teaching experience supported his higher merit increase. She has a point. Under the Equal Pay Act, "a factor other than sex" may justify a pay differential, but only when the proffered reason "actually motivated" the pay disparity. *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 511 (6th Cir. 2021) (first quoting 29 U.S.C. § 206(d)(1)). Defendants offered no evidence showing that Eshleman's prior teaching experience actually factored into his raise. But this does not upend the district court's ultimate ruling. The district court also concluded that Eshleman's superior research and teaching evaluations justified the pay disparity. And, as discussed above, no reasonable juror could conclude that this was pretextual. *See Schleicher*, 831 F.3d at 753. Thus, the district court did not err in granting summary judgment to Defendants on Guo's Equal Pay Act claim.

B.

Guo next argues that the district court erred in granting Michigan Tech summary judgment on her Title VII and ELCRA claims for race, sex, and national origin discrimination. Because

Title VII and ELCRA claims "involve the same analysis," we address them together. *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 n.4 (6th Cir. 2003).

Both statutes make it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see* Mich. Comp. Laws § 37.2202(1)(a). When, as here, a plaintiff relies on circumstantial evidence of discrimination, the plaintiff must first make out a prima facie case under the *McDonnell Douglas* framework. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 589 (6th Cir. 2014); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973). This requires showing that she (1) "is a member of a protected class," (2) "suffered an adverse employment action," (3) "was qualified for the position," and (4) "was replaced by someone outside the protected class or treated differently from similarly situated, non-protected employees." *Loyd*, 766 F.3d at 589. If she makes this case, the defendant "must identify a legitimate, nondiscriminatory reason for its actions;" and if the defendant succeeds, the plaintiff must demonstrate pretext. *Patterson v. Kent State Univ.*, 155 F.4th 635, 645 (6th Cir. 2025).

The district court determined that Guo failed to make out a prima facie case of sex (not including pregnancy), race, or national origin discrimination. We mostly agree. Although Guo alleges five different adverse actions, her prima facie case fails with respect to four because she has not shown that she "suffered [the] adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 622 (6th Cir. 2024) (citation omitted).

Guo alleges that she suffered five adverse actions. She says that Johnson required her to perform service while on parental leave;[3] the school cancelled the database subscriptions; the school constructively discharged her; the school awarded the Ten Haken fellowship to another professor with a higher stipend; and Guo received a low merit-based raise. Even if each of these would qualify as adverse actions,[4] Guo established differential treatment only for her low merit raise.

For the service-work and database-cancellation allegations, Guo makes no effort to show that others similarly situated (but outside her protected classes) were treated differently.[5] An adverse action alone does not amount to discrimination. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709–10 (6th Cir. 2006) (rejecting the plaintiff's discrimination claim after he established an adverse action but failed to establish differential treatment). So, for these adverse actions, Guo failed to make out a prima facie case of discrimination. *See Loyd*, 766 F.3d at 589.

The same is true of Guo's claim that she was constructively discharged based on Johnson's criticism during her fourth-year review. Guo's claim is that, although both the TPR Committee and Dean Johnson recommended that she receive a two-year reappointment at the end of her fourth-year review, Johnson told Guo that she needed to improve her service to be on track for

---

[3] Guo's pregnancy (i.e., sex) discrimination claims "are not part of [Guo's] appeal." Plaintiff-Appellant Br. at 17 n.2. So, we review this allegation only as a basis for race or national origin discrimination.

[4] While Guo's case was pending the Supreme Court decided *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). *Muldrow* rejected the notion that, under Title VII, an adverse action must be a "significant" employment disadvantage. *Id.* at 354–55. Instead, the employer's action "need only cause some 'disadvantageous change in an employment term or condition.'" *Patterson*, 155 F.4th at 645 (quoting *Muldrow*, 601 U.S. at 354). Because Guo's discrimination claims fail on other grounds, we need not decide whether her various allegations amounted to adverse actions.

[5] Indeed, she concedes that Eshleman, a white, male, American-born professor, was also affected by the database cancellation.

tenure in year six.  Guo further claims that "when a Dean criticizes any aspect of a professor's performance after the fourth-year review, the professor should attempt to find another job as soon as possible" because the professor is very unlikely to be granted tenure.  Plaintiff-Appellant Br. at 18–19 (citation omitted).  In other words, Guo posits that she had no choice but to resign because the "handwriting was on the wall." *Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014) (citation omitted).

Even if Guo's theory were right, Guo would still need to show that the alleged discharge was discriminatory.  To raise that inference, Guo would have to show that she was replaced by someone outside her protected classes or that she was effectively fired for reasons that did not motivate similar action against those outside her class.  *See Loyd*, 766 F.3d at 589.  Guo has not identified her replacement, so "she had to rely on comparator evidence to make out a prima facie case." *Hightower-Mathis v. Nextcare Mich. Providers, PLLC*, 2026 WL 126494, at *4 (6th Cir. Jan. 16, 2026).  She has not successfully done so.

To raise an inference of sex discrimination, Guo would have to offer male comparators with similar performance records who were not criticized during the fourth-year review.  But she points to no such comparator.

She does point to Heather Knewston, who is white and American-born, in an apparent attempt to raise an inference of race or national origin discrimination.  But Knewston was also criticized during her fourth-year review—and in an area (research), that the university weighed much more heavily than service.  The TPR Committee called her research record "weak," R. 66-18, TPR Review, PageID 450, and Johnson expressed "concern" that she had published only one article while at Michigan Tech, R. 66-19, Johnson Review, PageID 452.  Although he indicated that she had completed some "commendable research activities," such as "internal Brown Bag

presentations," he called it "vital" that Knewston actually establish a publication record and give "[c]onference presentations" "in compliance with SBE promotion expectations." *Id.* So, if fourth-year criticism amounts to constructive discharge (as Guo claims) then Knewston was *also* constructively discharged, so no inference of race or national origin discrimination arises. And finally, despite being criticized during her fourth year, Knewston *was granted tenure* in year six, suggesting that such criticism did not, in fact, amount to a constructive discharge at all.

Guo's allegation regarding the Ten Haken fellowship also fails because she has not identified a comparator who was "similarly-situated" "in all of the relevant respects" but was treated differently. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (citation modified). Guo compares herself to Jeff Wall, a white male, who received the Ten Haken Fellowship in Business after Guo. But Guo tells us nothing about Wall's qualifications for the fellowship or how its terms were set, so she has not shown that the two were similarly situated.

Only the low merit raise remains. Here, Guo compares herself to Knewston and Eshleman, each of whom received higher raises than Guo. The district court, however, rejected the comparison to Knewston and other professors outside the accounting field, noting that Guo had failed to "offer any showing of why any of these professors in different [academic disciplines] are similarly situated." R. 73, Mot. Hr'g Tr., PageID 521. On appeal, Guo has still not explained. *See Castellon-Vogel v. Int'l Paper Co.*, 829 F. App'x 100, 102 (6th Cir. 2020) ("[T]he appellant . . . must confront the district court's reasons . . . and explain why the court was wrong."). Thus, Guo cannot rely on comparisons to Knewston to establish a prima facie case of discrimination.

So, only Eshleman remains as a comparator. But, assuming that Guo established a prima facie case of discrimination based on the pay disparity between her and Eshleman, this claim still

fails. When Title VII and ELCRA claims are based on the same facts as an Equal Pay Act claim, the claims "often rise and fall together." *Beny v. Univ. of Mich.*, 2025 WL 2124175, at *10 (6th Cir. July 29, 2025), *cert. denied*, 146 S. Ct. 829 (2025). And an employer may avoid liability under these claims "if it can establish one or more of the four affirmative defenses in the EPA." *Beck-Wilson v. Principi*, 441 F.3d 353, 369 (6th Cir. 2006). As we determined above, Michigan Tech established an Equal Pay Act affirmative defense with respect to the pay disparity between Guo and Eshleman. This dooms Guo's Title VII and ELCRA wage-discrimination claims. *See id.* We affirm the district court's grant of summary judgment to Michigan Tech on Guo's Title VII and ELCRA discrimination claims.

C.

Guo further argues that the district court erred in granting Michigan Tech summary judgment on her Title VII and ELCRA retaliation claims. We disagree.

As with the discrimination claims, we address federal and state retaliation together. *See Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012). Both Title VII and ELCRA prohibit an employer from discriminating against an employee "because [she] has opposed" a discriminatory practice. 42 U.S.C. § 2000e-3(a); Mich. Comp. Laws § 37.2701(a). Because Guo bases her claims on indirect evidence, she must establish a prima facie case, showing that (1) she engaged in protected activity; (2) Michigan Tech knew of her protected activity; (3) it took a "materially adverse action" against her; and (4) "some causal link connected the protected activity and the materially adverse action." *Patterson*, 155 F.4th at 647.

Even assuming that Guo satisfied the first three elements, her claims fail because she has not shown causation. Guo offers two occasions of protected activity: on both April 5, 2018, and February 18, 2019, she complained of discrimination. Following these complaints, Guo allegedly

suffered multiple adverse actions. Between April 2018 and April 2019, Defendants (1) cancelled important database subscriptions, (2) searched her office; (3) gave away her fellowship, (4) withheld her fellowship stipend, and (5) failed to sign her reappointment documents. Johnson, in addition, is alleged to have (6) assigned her additional service work and (7) criticized her service during her fourth-year review. For the last four of these actions, Guo offers no argument regarding causation. Without a causal link, these actions cannot support Guo's retaliation claims.

For the remaining actions, Guo argues that "temporal proximity alone . . . should be sufficient to satisfy the causation prong." Plaintiff-Appellant Br. at 33. "Whether protected activity was the but-for cause of an adverse employment action depends upon the context in which that action occurs." *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020). We have previously instructed, however, that "[t]emporal proximity alone generally is not sufficient to establish causation." *Id.* While exceptions exist, they are "'rare,' even in instances involving relatively short time periods." *Id.* at 449 (citation omitted); *see Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400–01 (6th Cir. 2010) (noting that the exception applies "under limited circumstances" of "extremely close temporal proximity"). We have, for example, "infer[ed] a causal connection" based on proximity alone when an employer fired the plaintiff the same day he learned of the plaintiff's protected activity. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). We have also found temporal proximity significant in cases involving longer time periods when other circumstances supported causation. *See, e.g.*, *Savage v. Fed. Express Corp.*, 856 F.3d 440, 448–49 (6th Cir. 2017); *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 570–71 (6th Cir. 2019).

Considering this caselaw, Guo's causation argument does not suffice. Twenty-five days passed between Guo's April 5, 2018, complaint and the cancellation of the databases on April 30,

and six weeks passed between her February 2019 complaint and losing the fellowship and the search of her office in April 2019. On this record, neither 25 days nor six weeks qualifies as "extremely close temporal proximity" that, taken alone, could justify an inference of causation. *See Vereecke*, 609 F.3d at 401. What's more, the database cancellation also affected Eshleman's research, and there is no indication that Michigan Tech wished to retaliate against him. Without evidence of causation, Guo fails to establish a prima facie case of retaliation. We affirm the district court's grant of summary judgment to Michigan Tech on Guo's Title VII and ELCRA retaliation claims.

D.

Finally, Guo challenges the grant of qualified immunity to Johnson. To overcome Johnson's qualified immunity defense, Guo needed to show that Johnson violated a constitutional right that was clearly established. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). Qualified immunity does not require Guo to have a "case directly on point," but its "demanding test" still requires her "to define the clearly established constitutional rule on which [she] rel[ies] with a high degree of specificity." *DeCrane v. Eckart*, 12 F.4th 586, 599 (6th Cir. 2021) (citation modified).

Guo failed to bear her burden. She offers a single case to argue that Johnson violated clearly established rights, but she provides no explanation as to how the case, which deals with a zoning dispute, clearly prohibited Johnson's conduct in these circumstances. *See Paterek v. Village of Armada*, 801 F.3d 630, 651 (6th Cir. 2015). The district court deemed her arguments on this issue "simply not sufficient." R. 73, Mot. Hr'g Tr., PageID 530; *see Martinez v. Wayne County*, 142 F.4th 828, 840–41 (6th Cir. 2025). We agree.

* * *

The district court properly granted summary judgment to Defendants with respect to Guo's Equal Pay Act claim, her sex, race, and national origin discrimination claims, and her retaliation claims. The court also properly granted Johnson qualified immunity. We affirm.

II.

We now turn to Michigan Tech's appeal (no. 25-1077), which concerns only Guo's state-law pregnancy discrimination claim. That claim was tried to a jury, which returned a verdict in Guo's favor. Before trial, Michigan Tech argued that the ELCRA claim should have been dismissed. It also moved to exclude certain evidence. Then, during trial, the school moved for judgment as a matter of law. The district court disagreed on all fronts. Michigan Tech appeals.

A.

Michigan Tech first argues that the trial court erred by submitting Guo's ELCRA pregnancy discrimination claim to the jury. As Michigan Tech sees it, Guo never pleaded such a claim.

A pleading must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Kensu v. Corizon, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021) (citation modified). We review a district court's Rule 8 determination for abuse of discretion. *Id.*

Guo's amended complaint did not use the words "pregnancy discrimination." But both Title VII and ELCRA treat pregnancy discrimination as sex discrimination. *See Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 657–58 (6th Cir. 2000); *Haynie v. State*, 664 N.W.2d 129, 133–34 (Mich. 2003). Guo complained of "race/sex/national origin discrimination" under both Title

VII and ELCRA and alleged facts relating to her pregnancy and maternity leave. R. 5, First Am. Compl., PageID 23–24, 27, 29–30 (citation modified). Michigan Tech conceded that this sufficed to notify it of a "potential [Title VII] pregnancy discrimination claim." R. 115, Def.'s Resp., PageID 683. Yet, according to the university, it did not suffice for the ELCRA claim. Why? Because Guo's complaint used "sex" to describe the Title VII discrimination but used "gender" when describing her ELCRA claim. *See* R. 5, First Am. Compl., PageID 29–31.

Michigan Tech maintains that this difference mattered because ELCRA, unlike Title VII, explicitly defines "gender identity or expression" and thus distinguishes between "sex" and "gender" discrimination. *See* Mich. Comp. Laws § 37.2103(f). Whether or not that is true now, it was not true when Guo filed her complaint in 2021. Michigan did not add the gender-identity definition to the statute until 2023. *See id.* Apart from this definition, Michigan Tech offers no reason why the court should have distinguished between "sex" and "gender." The district court did not abuse its discretion in determining that Guo's pleading provided sufficient notice of her ELCRA pregnancy-discrimination claim.

Michigan Tech's additional appeal to the record is unavailing. The school argues that the summary-judgment order issued by the first district judge made clear that only the Title VII pregnancy claim remained when she said that "this case will proceed on Plaintiff's pregnancy discrimination claim only." R. 71, Order, PageID 479. The inference arises, Michigan Tech claims, from the use of the singular. We think the inference unwarranted. The order mentioned neither Title VII nor ELCRA by name, instead referring just to "Plaintiff's pregnancy discrimination claim." *Id.* And, at the hearing, the district court treated the federal and state claims together while referring both to "pregnancy claims" (plural) and a "pregnancy claim" (singular). R. 73, Mot. Hr'g Tr., PageID 518, 526, 530–31. We see no clear indication in the record that the

first district judge intended to dismiss either of the pregnancy discrimination claims; and if use of the singular were enough, we don't know why we would infer that it was the ELCRA claim, as opposed to the Title VII claim that did not survive. Up until that point, no one had pointed to any difference between the two forms of liability.

But even if the first district judge had intended to dismiss the ELCRA claim, Michigan Tech has not explained why the second judge, who took over the case before trial, could not decide that the claim should nonetheless proceed. *See In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) ("[D]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." (citation omitted)). The district court did not abuse its discretion in allowing the ELCRA claim to proceed.

B.

Michigan Tech next argues that the district court erred by denying its motion for judgment as a matter of law. At trial, the jury found Michigan Tech liable for only one claim: ELCRA pregnancy discrimination. The university moved for judgment as a matter of law; the district court denied the motion.

We review the denial of such a motion de novo. *Advance Sign Grp., LLC v. Optec Displays, Inc.*, 722 F.3d 778, 783 (6th Cir. 2013). To the extent that Michigan Tech's "Rule 50 motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence, this [c]ourt applies the standard of review used by the courts of the state whose substantive law governs the action." *Lowe v. Walbro, LLC*, 147 F.4th 601, 608 (6th Cir. 2025). Here, however, the federal and state standards substantially overlap. Neither party argues that "the state rule on the quantum of proof needed to reach the jury" in Michigan "differ[s] significantly from the rule in the federal courts." 9B *Wright & Miller's Federal Practice & Procedure* § 2525 (3d ed. 2026).

And under both Michigan and federal law, we "review the evidence and all legitimate inferences in the light most favorable to the nonmoving party." *Craig ex rel. Craig v. Oakwood Hosp.*, 684 N.W.2d 296, 303–04 (Mich. 2004) (citation omitted); *Advance Sign*, 722 F.3d at 783. We do not "weigh the evidence, question the credibility of the witnesses, or substitute our judgment for that of the trier of fact." *Ermold v. Davis*, 130 F.4th 553, 565 (6th Cir. 2025) (citation omitted); *cf. Zeeland Farm Servs., Inc. v. JBL Enters., Inc.*, 555 N.W.2d 733, 735 (Mich. Ct. App. 1996). Rather, the jury's verdict is "given great deference." *Advance Sign*, 722 F.3d at 783; *Allard v. State Farm Ins. Co.*, 722 N.W.2d 268, 276 (Mich. Ct. App. 2006).

ELCRA prohibits an employer from discriminating against an employee because of sex, including pregnancy. Mich. Comp. Laws §§ 37.2201(d), 37.2202(1)(a). Michigan courts analyze pregnancy discrimination in the same way as other discrimination claims. *See, e.g.*, *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 192–94 (Mich. 2003). So, a pregnancy claim requires, among other things, an adverse action and causation. *See id.* Michigan Tech argues that Guo failed to establish either one. We disagree.

Guo established an adverse action: she received a low merit raise following her maternity leave. Under Michigan law, an adverse employment action must be "materially adverse." *Wilcoxon v. Minn. Min. & Mfg. Co.*, 597 N.W.2d 250, 258 (Mich. Ct. App. 1999) (citation omitted). Michigan courts have concluded that "the failure to grant a merit increase, which is otherwise warranted, can constitute an adverse employment action." *Chen v. Wayne State Univ.*, 771 N.W.2d 820, 841 (Mich. Ct. App. 2009); *see also Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 786 (6th Cir. 2024) ("[A]n employer's withholding of a discretionary raise or bonus that an employee is otherwise entitled to based on the terms and conditions of employment may constitute an adverse action . . . .").

Considering these cases, Guo's low merit raise after her maternity leave was an adverse action. And, viewing the evidence in the light most favorable to Guo and drawing all reasonable inferences in her favor, reasonable jurors could conclude that Guo was entitled to a higher merit increase. The semester after Guo took maternity leave, she received a merit increase of 1.13%. Her husband received an increase of 2.24%.

Guo confronted Johnson about her merit raise. When she asked "what was going on with [her] low raise," he said it was "because you took maternity leave and you didn't do enough service." R. 157, Trial Tr., PageID 1522–23. But the provost had informed Johnson, while Guo was on maternity leave, that Guo was to be relieved of her service duties. Yet even after her leave, Johnson continued to criticize her during-leave service as deficient. Considering this evidence, a reasonable juror could conclude that Johnson knowingly and improperly considered Guo's service in determining her merit increase and gave her a lower increase than she was entitled to because of her pregnancy.[6]

This also shows causation. To prove pregnancy discrimination, a plaintiff "must establish a causal link between the discriminatory animus and the adverse employment decision."

---

[6] The careful reader may wonder why the pregnancy discrimination claim made it to the jury (and why we uphold the verdict) when the Equal Pay Act claim, discussed in appeal no. 24-1891, did not (and we upheld the grant of summary judgment). After all, both claims alleged that sex discrimination caused the pay disparity between Guo and Eshleman. And in the Equal Pay Act claim, we determined that no reasonable jury could doubt that Eshleman's work was superior. The difference lies in Johnson's statement directly telling Guo that the reason for her low merit raise was that she "took maternity leave" and "didn't do enough service" (that she wasn't required to do at all) during her leave. R. 157, Trial Tr., PageID 1522–23. Perhaps Guo could have marshaled this comment in support of her Equal Pay Act claim as well. But she never asked the district court—or this court—to consider that fact in evaluating her Equal Pay Act claim. And the district court was under no duty "to search the entire record to establish that it [was] bereft of a genuine issue of material fact." *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). We review the case presented to the district court, so we did not consider this statement with respect to the Equal Pay Act claim.

*Sniecinski*, 666 N.W.2d at 193. As discussed above, Johnson directly told Guo that but for her maternity leave (and her decision to claim the reduced workload to which the school's policy entitled her), she would have received a higher merit raise. Thus, if the jury believed Guo over Johnson, *see Ermold*, 130 F.4th at 565, then Guo established causation and pregnancy discrimination. Michigan Tech was not entitled to judgment as a matter of law.

C.

Alternatively, Michigan Tech argues that the district court erred in denying its motions in limine and admitting certain evidence. We review the district court's evidentiary decisions for an abuse of discretion. *Branham v. Thomas M. Cooley L. Sch.*, 689 F.3d 558, 562 (6th Cir. 2012). The district court abuses its discretion if it "relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *In re Countrywide Fin. Corp. Mortg. Lending Pracs. Litig.*, 708 F.3d 704, 707 (6th Cir. 2013) (citation omitted).

For evidentiary challenges based on relevance and prejudice, we accord the district court broad discretion and do not "lightly overrule [the] decisions." *United States v. Penney*, 576 F.3d 297, 315 (6th Cir. 2009) (citation modified). We look "at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Allen*, 619 F.3d 518, 525 (6th Cir. 2010) (citation omitted).

Before trial, Michigan Tech filed multiple motions in limine to exclude references to wage disparity, constructive discharge, rejected adverse-action allegations, and tenure review. The district court denied all the motions, determining that the evidence was relevant to the issues of discriminatory animus and economic damages. The university says this was error.

Michigan Tech first argues that the district court erred in allowing evidence regarding certain previously-rejected adverse-action allegations: cancelling the databases, assigning Guo to VITA, and removing the laptop from Guo's office. It contends that admission of this evidence permitted Guo "to base her claims on actions [the prior judge] [had] ruled were not adverse." Defendant-Appellant Br. at 58. We will assume, for present purposes, that Guo's grievances would not count as adverse actions, even after *Muldrow*. Even so, Michigan Tech's argument fails because we "generally presume[] that if properly instructed by judges and guided by counsel, juries are capable of considering evidence for one purpose but not another." *Washington v. Hofbauer*, 228 F.3d 689, 705 (6th Cir. 2000). Here, the district court provided a limiting instruction regarding these actions, instructing the jury that it could consider the actions as "evidence of intent, such as whether or not there was hostility, animus, or ill feeling due to the plaintiff's pregnancy and/or maternity leave," but it could not view them as adverse actions. R. 158, Trial Tr., PageID 1764. Michigan Tech doesn't argue that this limiting instruction was insufficient. Thus, the district court did not err in admitting this evidence.

Next, Michigan Tech challenges the admission of evidence regarding alleged wage disparities in 2017 and 2018. But the 2017 evidence was plainly relevant to Guo's pregnancy discrimination claim: she alleged that she received a low merit increase in 2017 and that when she asked Johnson about it, he told her the low raise was because of her maternity leave. The court and the parties agreed that "the alleged low merit increase" was an "adverse employment action[] at issue in [the] case." R. 158, Trial Tr., PageID 1577–78. As relevant evidence, it was admissible. *See* Fed. R. Evid. 402. Insofar as the 2018 pay disparity could not be considered an adverse action, Michigan Tech fails to explain how the court erred in deeming that evidence relevant to

"discriminatory animus." *See* R. 101, Op. and Order, PageID 627; *Castellon-Vogel*, 829 F. App'x at 102. Thus, this argument fails.

The university further argues error in the admission of evidence regarding Johnson's comments on Guo's fourth-year review and the school's failure to sign her contract. But Michigan Tech fails to explain specifically how this evidence was unfairly prejudicial. *See United States v. Choate*, 208 F.3d 215, 2000 WL 263348, at *6 (6th Cir. 2000) (unpublished) ("A defendant raising a Rule 403 argument must establish 'unfair' prejudice, not merely prejudice."). And it fails to explain how the court erred in deeming this evidence relevant to discriminatory animus. *See Castellon-Vogel*, 829 F. App'x at 102. So, this argument also fails.

Finally, Michigan Tech argues that the district court erred in allowing evidence regarding the loss of the Ten Haken fellowship. But the university does not demonstrate how any such evidence "was used against [it]" at trial, "and in the absence of any such citation to the record," it failed to show "that the district court abused its discretion." *Nat'l Credit Union Admin. Bd. v. Zovko*, 728 F. App'x 567, 570 (6th Cir. 2018). Thus, the district court did not abuse its discretion in admitting any of this evidence.

\* \* \*

We AFFIRM.